89 So.2d 34 (1956)
STATE of Florida, Appellant,
v.
DAYTONA BEACH RACING and RECREATIONAL FACILITIES DISTRICT, Appellee.
Supreme Court of Florida. Division B.
August 1, 1956.
Murray Sams, De Land, for appellant.
Thomas T. Cobb, Daytona Beach, and Mitchell, Pershing, Shetterly & Mitchell, New York City, for appellee.
*35 O'CONNELL, Justice.
This is an appeal from a decree of the Circuit Court, Volusia County, validating $2,900,000 revenue bonds of the Daytona Beach Racing and Recreational Facilities District.
The Daytona Beach Racing and Recreational Facilities District, hereinafter referred to as the District, was created by Chapter 31343, Special Acts of Florida, 1955 with powers, among others, to construct and operate any racing and recreational facilities within the territorial limits of the District, to lease, rent or contract for the operation of all or any part of any racing and recreational facilities, to fix and collect rates, rentals, fees and charges for the use of such facilities, and to issue bonds of the District to pay the costs of construction of such facilities. The Daytona Beach Racing and Recreational Facilities Commission, hereinafter referred to as the Commission, was created the governing body of the District.
The Commission caused feasibility and engineering investigations and studies to be made of a proposed racing and recreational facility. The Commission, acting upon the report of such investigations and studies, determined that a facility substantially as recommended by said report would be feasible, desirable, and self-liquidating and should be constructed at the earliest opportunity.
The City of Daytona Beach, on January 1, 1956, leased to the District for 99 years a tract of land and the District obtained options for the purchase of other lands, all within the District, for the construction of the facility. The District entered into a contract with the Daytona Beach Motor Speedway, Inc., hereinafter referred to as the corporation, whereby the corporation was given the right of possession of the facility for periods of time aggregating not less than six months in each year for a period of forty years for the purpose of conducting motorized races and other motorized events; the District retained the right of possession of the facility for the remaining six months of the year, and also at such other times as the corporation did not have events scheduled at such facility, for the conduct of its own recreational and educational events. Provisions were made in the contract for annual rental to be paid the District by the corporation.
On April 21, 1956, the Commission adopted a resolution authorizing the issuance of $2,900,000 Revenue Bonds of the District, payable solely from revenues derived from the facility. The bonds were to be issued for the purpose of paying for the cost of the facility and for making provision for the costs of maintaining, repairing and operating the facility.
A petition to validate the bonds was filed and the State filed its answer to the notice and order to show cause. Following the hearing, the Circuit Court for Volusia County entered its decree validating the proposed bonds and the proceedings therefor. The State thereupon brought the case to this Court on appeal.
The State, appellant, contends that the District was not validly created by Chapter 31343, Special Laws of Florida, 1955 in that the legal description of the area created therein included land in Flagler County, contrary to the express intent of said Act to include land in Volusia County only, and the description did not comprise a closed area. The State rightly asserts that the description of an assessment or taxing district must be certain and accurate. 14 McQuillin Municipal Corporation, § 38.51 (3rd Ed.). Under the terms of Chapter 31343 it is possible that ad valorem taxes levied upon all the taxable property in the District, after approval by the freeholder electors therein, might be used to pay bonds of the District. The State alleged that the description of the District was neither certain nor accurate and that the lower court was without power to alter the boundaries as established by the Legislature. In its decree *36 the lower court called attention to the obvious mistake of the Legislature in describing the District and found, as a matter of law, that the intent of the Legislature was to describe it otherwise, setting out a full and correct description in the decree. Appellant cited 63 C.J.S., Municipal Corporations, § 1368, as authority for its statement that the court had no power to alter the boundaries, wherein it is said "the court cannot alter the boundaries of the district as established by ordinance on petition by the property owners". The same section says that the presumptions are in favor of the municipality and the burden of proof is on the party assailing the validity of the District.
While this is a troublesome question, it appears to us that the description in the special act was, although inaccurate, still capable of being made certain in accordance with the clear intent of the Legislature. We believe that the court properly corrected the error by adding words which caused the description to comprise a closed area including lands lying only in Volusia County. It is clear from the Act in question that such was the intention of the Legislature. In correcting this error the court did not violate any inferences contained in the citation from C.J.S. referred to above. In State ex rel. Buford v. Town of Forest Park in Hillsborough County, 87 Fla. 477, 100 So. 735, 738, this Court said:
"We think the description comes within the rule laid down by this court in Town of Enterprise v. State, 29 Fla. 128, 10 So. 740; Lane v. State, 63 Fla. 220, 57 So. 662, and that the description of the territory incorporated `is not so uncertain as to make it impossible to determine the territory intended to be included in the municipality,' and, where such is the case, `the law is not void for uncertainty of description'".
This Court, in State v. City of Sarasota, 92 Fla. 563, 109 So. 473, 477, remarked that all legal presumptions must be indulged by the courts in favor of the validity of legislative enactments and that the rules in reference to the construction of descriptions of municipal territory in acts of the legislature are more liberal than those applying to descriptions in notices of incorporations and resolutions adopted by municipal incorporators. In 2 McQuillin, Municipal Corporations, Sect. 7.05 (3rd Ed.) it is said that generally the description of boundaries in a statute is not construed as strictly as that in a grant or contract.
The appellant next argues that the construction and operation of a racing and recreational facility by the District would be improper in that such would not be a proper public purpose. It cited State v. Town of North Miami, Fla., 59 So.2d 779; Adams v. Housing Authority of City of Daytona Beach, Fla., 60 So.2d 663; and City of Clearwater v. Caldwell, Fla., 75 So.2d 765. Each of these cases involved attempts of the city to use public funds to develop property for private benefit and gain and in each case the Court ruled such not to be proper public use. In each of these cases the private purpose was predominant, not incidental to a public purpose. The first case involved the development of an area for industrial purposes; the second involved the acquisition of an area for leasing to private enterprises for industrial and commercial purposes; and the third was concerned with the city being involved in the construction for leasing of hotels or apartments for private enterprise.
In the instant case a private corporation would be in a position to utilize private gain from the facility, but only for a portion of the year. Under the agreement between the District and the corporation, the corporation is given the use of the facilities to be constructed for a period of not less than six months in each year for the conduct of a schedule of motorized racing activities and attractions. The Commission *37 is to have the use of the facilities for its own programs for a period of not less than six months each year and at all other times when not scheduled for use by the Corporation. The corporation would conduct automobile racing events of international interest, as well as other attractions. Tourism, both as between the areas of our State and as between the States of this Nation, is a competitive business. The sand and the sun and the water are not sufficient to attract those seeking a vacation and recreation. Entertainment must be offered. Even ignoring its use by the District for periods aggregating one-half the year, or more, for other recreational and educational purposes for the public, the facility in question, considering the uses to which it will be adopted and their expected effect on the public welfare, is infinitely more a valid public purpose than would any of the schemes contemplated in the three instances cited above. The public purpose here seems to be predominant and the private benefit and gain to be incidental.
The enabling act expressly stated its purpose was to further public purposes in promoting the economic, commercial and residential development of the District and the lower court recognized in its decree that such would be done in the proposed development of the District. Since the Legislature determined that public purpose would be served, we should not find to the contrary unless it be found the Legislature was not just and reasonable or was arbitrary. State v. City of Jacksonville, Fla., 53 So.2d 306; State v. Monroe County, 148 Fla. 111, 3 So.2d 754. This Court, in the recent case of State v. Inter-American Center Authority, Fla. 1955, 84 So.2d 9, decreed that construction of the Inter-American Cultural and Trade Center was a public purpose and that the imposition of taxes to pay for such was proper. The purpose of the Center was to increase trade and to strengthen cultural relations with other countries.
In the instant case the purpose of the facility is both to increase trade by attracting tourists and to provide recreation for the citizens of the District. We have on numerous cases approved as a public purpose the development of recreational facilities. See State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218; State v. City of Jacksonville, Fla., 53 So.2d 306; State v. City of Pensacola, Fla., 43 So.2d 340. Appellee's brief ably cites authorities in other jurisdiction which are in accord with the holdings of this Court on the matter. In State v. City of Miami, Fla., 41 So.2d 545, we upheld the selling of certificates to enlarge the Orange Bowl Stadium in Miami and appellant cites cases from several jurisdictions which also validated bonds for the construction of such recreational facilities. Therefore, it is our opinion that the development of the facility in question would serve a valid public purpose, and that the private benefit and gain would be incidental thereto.
Appellant's final argument is that to lease the facility for a part of each year to a private corporation constitutes a violation of Section 10 of Article IX of the Constitution of Florida, F.S.A., which prohibits the loaning of the District's credit to any corporation. It contends that the effect of the contemplated contract with the Corporation is to allow it to use the facility for part of each year for forty years with no capital investment and consequently the credit of the District is loaned to the Corporation. But we have heretofore held that if an undertaking is for public purposes, Article IX, § 10 of the Constitution is not violated even though some private parties may be incidentally benefited. We said in State v. Inter-American Center Authority, Fla., 84 So.2d 9, 12, supra:
"* * * Since the erection of a Trade Center is designed to strengthen cultural relations among the countries of the Western Hemisphere, it can *38 not be said that it amounts to a pledge or loan of the credit of the state to an individual, company, corporation or association in violation of Section 10, Article IX of the Constitution."
In State v. Board of Control, Fla., 66 So.2d 209, 210, we said
"The mere fact that some one engaged in private business for private gain will be benefited by every public improvement undertaken by the government or a governmental agency, should not and does not deprive such improvement of its public character or detract from the fact that it primarily serves a public purpose. An incidental use or benefit which may be of some private benefit is not the proper test in determining whether or not the project is for a public purpose."
This court has in numerous instances approved the imposition of taxes as being an aid to a public purpose. State v. Inter-American Center Authority, supra; State v. City of Miami, Fla., 76 So.2d 294, dealing with an international trade mart (owned, however, by the city); C.V. Floyd Fruit Co. v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562, involving a tax on citrus fruit for advertising purposes; State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218, supra, upholding a tax for construction of an auditorium, stadium, boat basin and recreational center; State v. Dade County, Fla., 62 So.2d 404, where a warehouse and overhaul shop were to be constructed and then leased to airlines corporations and the revenue certificates were to be paid from rentals from such corporations; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402, where the construction of an office building by the City for rental purposes was upheld as a public purpose; State v. Escambia County, Fla., 52 So.2d 125, where revenue certificates were sold to construct recreational facilities which could be leased out to private enterprises. It can clearly be seen that in the above cases this Court did not hold the imposition of taxes or use of tax monies to be invalid because some private businesses profited thereby, rather this Court ruled that the tax was for valid purposes notwithstanding the incidental private gain for private businesses. In State v. Town of North Miami, Fla., 59 So.2d 779, supra, involving an area for industrial purposes; in Adams v. Housing Authority of City of Daytona Beach, Fla., 60 So.2d 663, involving leasing of lands for private, commercial and business enterprises; and in City of Clearwater v. Caldwell, Fla., 75 So.2d 765, supra, involving the construction for leasing of hotels and apartments, we held that the constitutional provision against the lending of the credit of a city would be violated. In those cases the incidental public purpose accomplished was too inconsequential in comparison to the private gain. We do not feel that the case at bar has such shortcomings and we express our opinion to be, in conformance with our views in the numerous instances referred to earlier in this opinion, that the issuance of the $2,900,000 revenue bonds is in aid of a valid public purpose and does not violate Section 10 of Article IX of our State Constitution.
The decree of validation appealed from is
Affirmed.
DREW, C.J., and THOMAS and ROBERTS, JJ., concur.