STURGIS, Chief Judge.
The appellants, Daytona Beach Racing and Recreational Facilities District, a body politic created by Chapter 31343, Laws of Florida, Acts of 1955, hereinafter called *158 the "District,” and The City of Daytona Beach, a Florida municipal corporation, hereinafter called the “City,” brought this suit against C. S. Paul, as Tax Collector for Volusia County, Florida, Ray E. Green, as Comptroller of the State of Florida, Warren Jackson, as Tax Assessor for Volusia County, Florida, and the County of Volusia, a political subdivision of the State of Florida, to enjoin the collection of ad valorem taxes assessed by the Volusia County tax authorities against certain lands owned by the City. The second amended complaint was finally dismissed on motion of the defendant-appellees for failure to state a cause of action entitling plaintiffs to the relief sought, hence this appeal.
The second amended complaint alleges the following material facts which, for the purposes of the order appealed and this review, are treated as true:
■ The act creating the District empowered it to construct and operate racing and recreational facilities within the territorial limits of the District, and/or to lease the same or contract for the operation thereof. On January 1, 1956, the City leased to the District for 99 years 374 acres of land which is involved by the tax assailed. The District then purchased approximately 70 acres of adjoining land so as to enable it to construct on the combined properties a recreational facility consisting of a 2½ mile automobile race track and appurtenant structures at an estimated cost of $2,900,000 which was contemplated to be provided by a revenue bond issue of the District. Anticipating validation and sale of such bonds, the District then contracted to lease said facilities to Daytona Beach Motor Speedway, Inc. The foregoing plan was presented to the Circuit Court of Volusia County and to the Supreme Court of Florida in bond validation proceedings and the proposed bond issue was approved. See State v. Daytona Beach Racing and Recreational Facilities District, 89 So.2d 34 (Fla.1958).
A vigorous but unsuccessful effort was made to sell the necessary bonds and the District then worked out certain modifications of its lease with the City and entered into a new lease and operating agreement with Daytona International Speedway Corporation, hereinafter referred to as the “Corporation,” whose principals were the same as those of the former lessee, Daytona Beach Motor Speedway, Inc. Under the new and existing contract the Corporation became obligated to raise the necessary funds and construct a speedway and recreational facility on the combined acreage and prior to January 1, 1960, fulfilled these obligations by erecting a facility essentially the same as that which the District had proposed to build on its own account and for which its bonds had been validated.
The new lease from the District to the Corporation is for 50 years from November 8, 1957, with a right to renew for 25 additional years. Under this lease the Corporation holds the land and owns the improvements which become the property of the District only upon default or at the end of the lease. The District has a right to recapture the land and improvements thereon after 20 years by paying to the Corporation in cash a sum equal to ten times the gross income of the Corporation from “all activities conducted on or at the facility” during the then last fiscal year. In the event the property is taken by condemnation, the District is limited to $120,-000 for its share of any compensation received for the taking of the entire demised property. The Corporation has unlimited rights of assignment and sublease and has mortgaged the leasehold for $600,-000. There is reserved to the District the use of the premises “for periods aggregating at least three months in each fiscal year,” to be enjoyed subject to the following limitations:
“ * * * on dates and for terms when the facility or any such part thereof desired by the District is not being used by the Corporation, and the use *159 of any such part of the facility on any such date or for any such term does not unreasonably interfere with or conflict with the Corporation’s plans therefor or use thereof.
“The District shall have no right to use any such part of said facility for such public uses and purposes on any date or during any period of term when the facility or such part thereof is being used by the Corporation under and pursuant to the terms hereof, even though the total use made of the facility by the District during a particular fiscal year in the aggregate totals less than three months. * * *
“It is further intended that at all times when the grandstands, parking areas, and race course or courses or any part thereof is not being utilized by the Corporation, such part or parts of the said facility as is herein made available to the District, shall be available to the District for all proper public uses and purposes, for periods totaling not more than three months in each fiscal year.” (Emphasis supplied.)
The lease from the City to the District covering the 374-acre tract provides that the City shall not tax said land. The District by its lease with the Corporation, which includes the City tract and the District-owned tract, agreed to hold the Corporation harmless from liability for all taxes upon the leased land.
The 1960 Volusia County tax assessment roll gives the City-owned 374-acre tract an assessed value of $250,000, and on that basis a county tax of $11,500.00 for that year was levied thereon. (Note: It is alleged that said tax roll also gave an assessed value of $90,640 to the 70-acre tract owned by the District and on that basis a county tax of $4,169.44 was levied thereon for the year 1960 but was subsequently voided. This fact is irrelevant to the issue on appeal.) In 1961 the City-owned tract was again assessed for county purposes. Appellants then brought this suit to enjoin the collection of said taxes on the ground that the same are unlawfully levied and assessed. Appellants seek reversal of a decree finally dismissing their second amended complaint for failure to state a cause of action.
The points of law argued and relied upon by appellants for reversal are: (1) That the second amended complaint states a cause of action for the relief prayed; more specifically, (2) that the transactions between the City, District, and Corporation for the operation of racing and recreational facilities are authorized by Chapter 31343, Laws of Florida, Acts of 1955, and constitute a “municipal purpose” within the meaning and purview of Article XVI, Section 16, Constitution of Florida, F.S.A.; and (3) that the uses made of the leased premises by the Corporation have a “scientific” or “educational” purpose within the meaning of Article XVI, Section 16, Constitution of Florida, thus entitling the City’s land to be exempted from taxation.
Appellants’ brief states the theory of the case substantially as follows:
(a) That the tax exemption granted to the District by Section 13, Chapter 31343, Laws of Florida, Acts of 1955, is controlling.
(b) That the legislative declaration of “public purpose” as set out in Section 17 of said act is a lawful predicate upon which to support such exemption.
(c) That the effect of the final decree entered by the Circuit Court of Volusia County and affirmed by the Supreme Court (89 So.2d 34) in the bond validation proceedings relating to the proposed issue of revenue bonds by the District, which contains a finding that the economic welfare of the inhabitants of the District is dependent to a substantial degree upon the operation of the mentioned facility, is to set at rest all questions as to the “municipal purpose” served by the Corporation under the *160 existing lease; that said court decisions conclusively affirm the City’s claim of tax exemption.
(d) That the decision of the Florida Supreme Court in the District’s bond validation proceeding's (89 So.2d 34) operates to bar imposition of the subject tax.
(e) That “educational” and “scientific” aspects of the Corporation’s operation of the subject facility entitles the City to the claimed tax exemption under the provisions of Section 16, Article XVI, Constitution of Florida.
(f) That the identity of use of the City’s land, which the appellees have taxed, with that of the District’s land, which the appellees have not taxed, renders invalid the tax sought to be imposed upon the City’s land.
(g) That the subject tax is not imposable because there have been administrative determinations of the Board of County Commissioners of Volusia County and of the Attorney General of the State of Florida to the effect that the subject facility is public in nature.
(h) That the exemption is available pursuant to Section 192.06(2), Florida Statutes, F.S.A., which was enacted pursuant to Article IX, Section 1, Florida Constitution.
(i) That by enactment of Chapter 61-266, Laws of Florida, Acts of 1961, embraced in Section 192.62(2) (c), Florida Statutes 1961, F.S.A., the legislature has reaffirmed the tax-exempt status of the subject lands, so that the same is not now subject to attack.
It is important at the outset to note and at all times bear in mind that this appeal has to do with a claim to tax exemption rather than any question as to the validity of a proposed issue of revenue bonds; that we are not here concerned with the application of the decision of the Florida Supreme Court validating the proposed but now abandoned issue of bonds by the District. These distinctions are essential to a proper analysis of the constitutional, statutory, and case law governing this appeal.

Appellants’ Points 1 and 2

These points are to the same effect and will be jointly discussed. Article IX, Section 1, Constitution of Florida, excepts from taxation “such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes.” Article XVI, Section 16, provides that “The property of all corporations * * * shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes.”
The case of Miller v. Doss, 46 So. 2d 888 (Fla.1950), is cited in support of appellants’ contention that Article XVI, Section 16, of the state constitution is no longer in force. The many tours of that case between the Circuit and Supreme Courts ultimately produced a four-to-three decision of the Supreme Court holding that a nonprofit corporation could enjoy tax exemption regardless of said Section 16. We note that although Mr. Justice Terrell, who delivered the opinion of the majority, said that in his view that section is now obsolete, he later said, and we agree:
“I do not think this provision of the Constitution has any relevancy whatever to the question presented.”
This language and the consideration given said section by later cases refutes the contention that it is no longer a part of the organic law.
Appellants do not contend that the subject property is being used for literary, religious, or charitable purposes, and we later discuss their contention (under Point 3) that the property is exempt as being used for “scientific” or “educational” purposes. Hence the answer to appellants’ Points 1 and 2 ultimately turns on whether or not the property is being used for “municipal” purposes within the meaning of said Section 16, Article XVI, as im *161 plemented by Section 192.06, Florida Statutes 1961, F.S.A., which provides in part:
“Property exempt from taxation The following property shall be exempt from taxation:
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
“(2) All public property of the several counties, cities, villages, towns and school districts in this state, used or intended for public purposes, including both real and personal property of all fire, hose and hook and ladder companies, except lands sold for taxes for the use of any counties, cities, villages, towns or school district; and including all property of municipally owned and operated public utilities held and used exclusively for municipal purposes.”
This statute must also be interpreted in the light of Section 13 of the act creating the District (c. 31343, Acts 1955) which uses the term “public purposes” in stating:
“ * * * as the racing and recreational facilities will constitute public property used for public purposes, no taxes or assessments shall be levied upon any such racing and recreational facilities or upon the income therefrom and any bonds issued * * * shall at all times be free from taxation within the state.” (Emphasis supplied.)
Appellees cogently argue, however, and we agree that Section 192.62(1), Florida Statutes 1961, F.S.A.,[1] is a limitation upon the tax exemption recognized by Section 192.-06, whereby exemption or immunity from taxation is inapplicable to property otherwise exempt that is being “used, occupied, owned, controlled or possessed, directly or indirectly by-[anyone] in connection with a profit making venture.” Since subpara-graph (1) of F.S. 192.62, F.S.A. is a limitation upon F.S. 192.06, F.S.A: as set out in subparagraph (2) thereof, it is obvious that the exceptions have the practical effect of so consuming the limitations referred to in subparagraph (1) of said section that F.S. 192.06, F.S.A. is for the most part unaffected by F.S. 192.62, F.S.A.; and the latter statute does not provide a competent basis on which to make a finding of legislative intent materially bearing on the issues of this appeal.
The legislature cannot vary the tax exemption provisions of Article IX, Section 1, and Article XVI, Section 16, of the state constitution. State ex rel. Burbridge v. St. John, 143 Fla. 544, 197 So. 131 (1940). The legislature is without power to provide for exempting from taxation any class of property which the constitution itself makes no provision for exempting. The constitution must be construed as a limitation upon the power of the legislature to provide for the exemption from taxation of any classes of property except those particularly mentioned classes specified in the organic law itself. Maxcy, Inc. v. Federal Land Bank of Columbia, 111 Fla. 116, 150 So. 248 (1933).
Section 192.06, Florida Statutes 1961, F.S.A., supra, is not in conflict with the constitutional concept that municipal property may not be exempted from taxation unless it is used “exclusively” for municipal purposes. It will be seen that after providing that “All public property of the several counties, cities, villages, towns and school districts in this state, used or intended for public pttrposes,” is *162 exempt from taxation, the last clause, relating only to cities, reads:
“including all property of municipally owned and operated public utilities held and used exclusively for municipal purposes.” (Emphasis supplied.)
The use in the statute of the words “public purposes” appears to result from the inclusion in the same sentence of the reference to public property of counties and school districts. The use of the words “municipal purposes” as found in the last clause of subsection (2) of Section 192.06 has specific reference to municipalities. Reading the subsection as a whole and giving effect thereto in harmony with the provisions of Section 1, Article IX, of the state constitution, we construe the statutory term “public purposes” as having a restrictive meaning consistent with said section of the constitution, which requires the legislature to “prescribe such regulations as shall secure a just valuation of all property * * * excepting such property as may be exempted by law for municipal * * * purposes.”
Tax exemptions, being in the nature of special privileges, should be strictly construed against the claimant and in favor of the taxing power. State v. Inter-American Center Authority, 84 So.2d 9 (Fla.1955). It is axiomatic that the burden of taxation increases in direct ratio to the degree of tax exemption accorded under any circumstance; and while it is the prerogative of the people by the organic law to allow and set the bounds of tax exemptions, we are cognizant of the fact that abuses have all too often invaded the field of tax exemption, infecting the body politic with a type of virus deadly to our system of government. As aptly said by the Florida Supreme Court in State ex rel. Miller v. Doss, 146 Fla. 752, 2 So.2d 303 (1941):
“Exemptions from taxation are special favors frowned upon by the courts. They invariably cast a greater burden on other taxpayers. Statutes granting exemptions should be strictly construed. Lummus v. Florida-Adirondack School, Inc., 123 Fla. 810, 168 So. 232; Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211.”
Reduced to its simplest terms in the light of the practical facts, it is appellants’ contention that the City-owned land on which the Corporation-developed race track is operated for profit should enjoy exemption from taxation under Section 16, Article XVI, Constitution of Florida, because such use is for a “municipal purpose” in that it provides a needed attraction for tourists. It is obvious that if such contention were sustained, the tax burden thus avoided must be borne by other landowners, including those owning lands used for other tourist attractions, such as a dog track, jai alai fronton, fishing pier and casino, shooting gallery, miniature gold course, etc., etc.
The argument that a “public purpose” is by its nature a “municipal purpose” is a non sequitur. The fact that the courts validated the bonds proposed to be issued by the District is irrelevant to the question of whether the City land here involved is exempted from taxation. In the bond validation case the sole question before the court was whether the District could issue revenue bonds in order itself to build a race track. The holding that it could do so is not the equivalent, as appellants insist, of a rule that the construction and operation of such race track by the Corporation, as now indicated, rather than by the District as then contemplated, is a “municipal purpose” of the City of Daytona Beach.
Had the City leased the subject land directly to the Corporation for an agreed rental and had the Corporation then constructed and proceeded to operate the race track for profit, such would not constitute a “municipal purpose” under Article IX, Section 1, or Article XVI, Section 16, Constitution of Florida, no matter how much the public might benefit from the development and use. The fact that the lease in *163 this case travels through the District to the Corporation is a distinction without a difference; and the presence of the District does not serve to insulate the City against the imposition of the county tax.
State v. Inter-American Center Authority, supra, is distinguishable from the case at bar. The Authority there proposed to use funds to be derived from the sale of its revenue bonds to build a public facility which was to be operated by the Authority to produce public revenue, a portion of which was to be used to pay off the revenue bonds. While a substantial parallel may be drawn between the facts upon which the bond validation proceedings were approved in the case relating to Inter-American Center Authority and the facts upon which the bond validation proceedings relating to Daytona Beach Racing and Recreational Facilities District were approved — proceedings which, we repeat, have no bearing on the issues of this appeal — ■, the facts in the transaction between the City, the District, and the Corporation and. the status of the parties in relation to the tax problem here involved are vastly different from those obtaining when the District’s bond validation proceedings were presented and approved. There is no reasonable parallel between the operation of the proposed facility for the promotion of trade with Latin America as there involved and the operation of a race track by a private corporation for profit as here involved.
At the time the District’s proposed issue of revenue bonds was validated there was in force a sublease from the District to Daytona Beach Motor Speedway, Inc. (that lease being superseded by the existing lease to the appellant private corporation) for ■operation of the facility for only six months of each year and for an ultimate term of 40 years. The present sublease from the District to the successor Corporation is for a term of SO years, with the privilege of extending it an additional 25 years,'and the rights of the District under its lease from the City have for practical purposes been turned over exclusively to the private corporation, as illustrated by the following provisions of the present sublease (emphasis supplied):
“(A) The District shall have the right to use the grandstands, parking area and race course, or race courses, including but not restricted to the area within the race course or race courses, for all proper public uses and purposes for periods aggregating at least three months in each fiscal year hereafter and during the term of this agreement, on dates and for terms when the facility or any such part thereof desired by the District is not being used by the Corporation, and the use of any such part of the facility on any such date or for any such term does not unreasonably interfere with or conflict with the Corporation’s plans therefor or use thereof.
“The District shall have no right to use any such part of said facility for such public uses and purposes on any date or during any period of term when the facility or such part thereof is being used by the Corporation under and pursuant to the terms hereof, even though the total use made of the facility by the District during a particular fiscal year in the aggregate totals less than three months. It is intended that during any and all periods and terms when the Corporation is using the facility or any part thereof, the Corporation shall have the full, exclusive and complete use of the part thereof being used by the Corporation and of all rights, privileges, licenses and other incidents appertaining thereto, of every kind and nature whatsoever.
“It is further intended that at all times when the grandstands, parking areas, and race course or courses or any part thereof is not being utilized by the Corporation, such part or parts of the said facility as is herein made available to the District, shall be available to the District for all proper public uses and *164 purposes, for periods totaling not more than three months in each fiscal year.
“The District shall not use nor permit any part of the facility to be used for motorized races, motorized exhibits, motorized exhibitions and displays, and motorized shows including but not limited to motor vehicular races, motor vehicular thrill shows and other motor vehicular attractions and exhibitions, contests, demonstrations and events of like nature, of every kind and description, * *
In the District’s bond validation proceeding, supra, the Florida Supreme Court held that “The public purpose here seems to be predominant and the private benefit and gain to be incidental.” Under the changed circumstances as outlined above, it is our conclusion that the public purpose is not predominant in the transactions here involved; on the contrary, the private benefit and gain is, as the decree appealed implies, the dominant rather than an incidental factor.
We are not persuaded that our Supreme Court, had it been faced with the changed facts with which we are now confronted, would have validated said bonds, even though a less rigid rule may be applicable to that type of case as compared to the rule that should govern-the case on review.
Despite the limited effect of the decision of the Florida Supreme Court in the District’s bond validation case, it has been the subject of concern in later decisions of the Supreme Court involving public financing. In State v. Clay County Development Authority, 140 So.2d 576 (Fla.1962), the court disapproved a proposed issue of revenue bonds on the ground that the primary purpose was to finance a private enterprise, and carefully distinguished its decision in the District’s bond validation case by pointing out that the facilities involved there “were proposed to be leased to private corporations for a portion of the year” and that “such leases were incidental to the public purpose." We are persuaded that under the changed circumstances the private purposes of the Corporation have swallowed up the pre-existing public purpose upon which rested the validity of the District’s proposed bond issue.
In City of West Palm Beach v. State, 113 So.2d 374 (Fla.1959), the chancellor held that a proposed issue of revenue certificates for the construction of a civic center and recreational facilities which were to be leased to a private corporation for rentals with which to retire the certificates was violative of Article IX, Section 10, Constitution of Florida. In rejecting appellant’s contention that the decision in our District bond validation case, supra, was authority for the arrangement proposed by the City of West Palm Beach, the Florida Supreme Court speaking through Mr. Justice Drew quoted with approval the following excerpt from the decision of the chancellor:
“ ‘The procedure whereby public funds are used to aid or promote individuals or private corporations in private enterprise is a dangerous and undemocratic course, and may not be followed except where it is clear and unmistakable that such private enterprise is a necessary adjunct to some proper public function.’ ”
Tax exemption of private enterprise is no less suicidal.
In Panama City v. Pledger, 140 Fla. 629, 192 So. 470 (1939), the city leased certain realty to a private corporation for 50 years for the construction of certain private and public docks, the cost of which was shared by the city and the private corporation. The corporation agreed to pay an annual rental and the city agreed to pay any taxes levied upon the property. In a suit by the city to enjoin the collection of county taxes the chancellor held and the Florida Supreme Court affirmed that the property was not being used for municipal purposes, hence was not exempt from taxation.
Appellants truly argue that the race track is of benefit to the public and that it has substantial economic value to the *165 tourist economy of the area where located. It is well settled, however, that such factors alone do not constitute a “municipal purpose” or a “public purpose” in contemplation of the applicable law. The fact that “public benefit” is derived from an undertaking does not necessarily mean that it has a legally recognizable “public purpose.” Grubstein v. Urban Renewal Agency of City of Tampa, 115 So.2d 745 (Fla.1959). While a project may be of great benefit to the public, if its primary purpose is to benefit private persons or a private corporation, it is not a municipal purpose. See State v. Town of North Miami, 59 So.2d 779 (Fla.1952), which involved the building of an aluminum plant to be leased to a private corporation; City of Bradenton v. State, 88 Fla. 381, 102 So. 556 (1924), involving the construction of a golf course to benefit a private golf club; State v. Town of Belleair, 125 Fla. 669, 170 So. 434 (1936), involving the construction of streets and bulkhead to benefit a private hotel and development corporation; City of Clearwater v. Caldwell, 75 So.2d 765 (Fla.1954), involving the lease of city land on which to construct a hotel; Adams v. Housing Authority of City of Daytona Beach, 60 So.2d 663 (Fla.1952), involving the condemnation of blighted areas with intent to sell or lease the condemned property to a private enterprise for the construction of housing, in which it was said:
“Incidental benefits accruing to the public from the establishment of some private enterprise is not sufficient to make the establishment of such enterprise a public purpose.”
In City of Daytona Beach v. King, 132 Fla. 273, 181 So. 1 (1938), a contract between the city and the private owner of a golf course was held to be of public benefit but not for a municipal purpose, and that the legislature was without power to ratify the use of municipal funds in connection with the contract.
Appellants cite Illinois Grain Corporation v. Schleman, 114 So.2d 307 (Fla.App.1959), as being factually in point. We agree with that premise, but it is of no comfort to appellants on the tax exemption issue of this appeal because the decision states:
“It is not essential that the question of exempt status be considered, as the problem in the instant proceeding is controlled by principles which concern the classification of the property assessed as tangible personal property.” (Emphasis supplied.)
When the same case later came before the same appellate court on the question of tax exemption (Illinois Grain Corporation v. Schleman, Fla.App., 144 So.2d 329, reh. den. September 20, 1962), it was held that the lands involved were not entitled to tax exemption. Said lands were owned by Hillsborough County Port Authority, a public agency created by Chapter 23338, Laws of Florida, Acts of 1945. That act broadly provided for exemption from taxation of all projects and property of the Authority, whether real or personal, tangible or intangible. The Authority leased its land to River-Gulf Terminal, Inc., for ten years, with options to renew for two successive terms of ten years each, and River-Gulf then sublet part of it to Illinois Grain Corporation for the same period. The subleased property was assessed against the Authority by the county assessor and the purpose of the suit was to enjoin enforcement of the tax. The defendants resisted on the theory that when the Authority’s land was improved by the sublessee and used for private business purposes, it lost its tax exempt status and was not entitled to the exemption provided by Section 1 of Article IX or Section 16 of Article XVI, Constitution of Florida. The trial court held that the improvements alone could not be assessed as real property to the sublessee (Illinois Grain Corporation) and that the lands as improved and subleased should be assessed as nonexempt property owned by the Port Authority, and on appeal Allen, J., speaking for the District Court of Appeal, Second District, said:
“Appellant argues that the use to which the leased premises occupied by *166 Illinois is being put contributes significantly to the economic growth of the port of Tampa, provides considerable employment and, therefore, because the premises are owned by the Authority, serves a municipal purpose. In so serving this municipal purpose, the argument continues, the property leased by Illinois is entitled to the exemption provided for in Section 20 above [the Special Act creating the Authority], which the legislature under Article IX Section 1 of the Florida Constitution is authorized to grant. Such public purpose is purported to be one facet of the Authority’s overall scheme of enhancing the economic development of the port of Tampa. On an analogous set of facts such reasoning was rejected in the recent case of State v. Clay County Development Authority, Fla.1962, 140 So.2d 576.”
After quoting from the Clay County case, the court said:
"It is true that the instant case does not involve pledging the credit of the State or one of its political subdivisions. It does, however, involve the question of to what extent a private enterprise situated on public land can be deemed to be fostering a public purpose.”
The court then went on to discuss the principles announced in Panama City v. Pledger, supra, and held that they were controlling, noting that the parties to the leases in the Illinois Grain Corporation case “contemplated the loss of the exemption provided for in the charter once the area involved became industrialized for private purposes.”
So it is seen that the facts in the second Illinois Grain Corporation case are highly analogous to those in the case on review. Plere the City by its primary lease to the District agreed “to bear, pay and discharge all taxes, assessments and levies of every nature and kind which may be taxed, charged, or assessed against the premises, or upon any buildings or improvements thereof, or which may be levied or imposed upon the leasehold estate hereby created, by any governmental agency other than the Lessor”; and the District by its sublease to the Corporation continued the tax liability contracted by the City, providing:
“The District covenants and agrees that it will hold the Corporation harmless from any and all liability for real property taxes, if any, assessed, levied or imposed upon or with respect to the lands herein let and demised to the Corporation. Any and all other taxes lawfully imposed on the Corporation by virtue of its use of the demised lands shall be paid by the Corporation.”
The decision in the second Illinois Grain Corporation case supports the decree appealed.
Appellants also rely on Gwin v. City of Tallahassee, 132 So.2d 273 (Fla.1961), the question there being whether the City of Tallahassee in Leon County was entitled to tax exemption in another county as to property used by the city for an electrical generating plant and distribution lines, which functions normally are held to come within the concept of a “municipal purpose.” In sustaining the right to such exemption the court followed the decision in Saunders v. City of Jacksonville, 157 Fla. 253, 25 So.2d 648 Fla. (1946), where it was held that electrical distribution lines, though located in another county but owned by the city, were being used for municipal purposes. In the Jacksonville case, as in the Tallahassee case, the city owned and operated the facilities and received all of the income accruing therefrom, while in the instant case the facilities are operated by a private corporation for profit and the revenue therefrom accrues to the Corporation. We note that in the Tallahassee case Mr. Justice Drew, speaking for the court, concluded that the Jacksonville case should stand and govern the Tallahassee case and that he used language which appellants suggest as indicating that “public purpose” and “municipal purpose” are synonymous terms. We think Justice Drew clearly recognized *167 that there is -usually a distinction by saying (text, 132 So.2d p. 276):
“Generically, of course, there is a difference but, so far as the use of the words in this particular setting is concerned, we think it clear that they are both used in the same sense and that is one generally embraced within the broad meaning of public purpose.” (Emphasis added.)
The significant part of the opinion in the Tallahassee case is found in the following excerpt (132 So.2d page 277):
“The case for Wakulla County hangs by a thin thread indeed. If we were dealing here with the property of a private corporation claimed to be exempt, the [tax levying] county would be in a stronger position. If property owned by the municipalities of this State held and used for a valid municipal purpose is to be subjected to taxation by another political body, we think the legislative authority for so doing should be clear and unambiguous.” (Emphasis supplied.)
State v. Escambia County, 52 So.2d 125 (Fla.1951), cited by appellants, was a bond validation proceeding having to do with the issuance of county bonds for the improvement of beach facilities and the building of a beach casino pursuant to a special act of the legislature. It goes no further than to hold that such was a proper county purpose. The opinion does not discuss generally what might constitute such a purpose and does not equate a “county purpose” to the “municipal purpose” clause of Article IX, Section 1, Florida Constitution. In the more recent case of Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla.1957), it was decided that the exemption of county property from taxation for county purposes is not derived from the “municipal purpose” clause of Article IX, Section 1, of the state constitution:
“After a careful study of appropriate provisions of the Constitution and the statutes we decide that property of the state and of a county, which is a political division of the state, Sec. 1, Article VIII, is immune from taxation, and we say this despite the references to such property in Sec. 192.06(1) and (2), supra, as being exempt. As we have shown in quoting the provisions in the Constitution dealing with county taxes, the inhibitions were aimed at the expenditure for other than county purposes of taxes raised by counties.”
The use to which the subject City-owned property in suit is now being put is entirely different from the contemplated use and “public purpose” reflected by the decision in the District’s bond validation proceedings. Moreover, it is “municipal purpose” rather than “public purpose” which here governs. The present use to which the City-owned property is subjected does not constitute a “municipal purpose” entitling the same to be exempted from taxation pursuant to the mentioned constitutional provisions and statutes enacted pursuant thereto.
The fact that independently-owned lands of the District, included in the sublease to the Corporation, are not assessed for county tax purposes is immaterial to the issues on this appeal. Administrative determinations of the Board of County Commissioners of Volusia County and of the Attorney General of the State of Florida are irrelevant.

Appellants’ Point 3

Appellants’ Point 3 is to the effect that “scientific” or “educational” uses to which the City-owned realty is put by the Corporation entitles the lands to tax exemption under Article XVI, Section 16, Florida Constitution. It is alleged that certain fuel and tire tests are conducted on the race track, but there is no claim that such tests are conducted in connection with any statutory purpose of the District or without pecuniary profit to the Corporation operating the race track; nor is it alleged that the property is being used “exclusively” for *168 “scientific” or “educational” purposes as is necessary for property to qualify for tax exemption under said provision of the constitution.
Finding no error, the decree appealed is
Affirmed.
CARROLL, DONALD K., J., concurs.
WIGGINTON, J., dissents.

. F.S. 102.62(1), F.S.A.:
“Any real or personal property which for any reason is exempt or immune from taxation but is being used, occupied, owned, controlled or possessed, directly or indirectly by a person, firm, corporation, partnership or other organization in connection with a profit making venture, whether such use, occupation, ownership, control or possession is by lease, loan, contract of sale, option to purchase or in any wise made available to or used by such person, firm, corporation, partnership or organization, shall be assessed and taxed to the same extent and in the same manner as other real or personal property.”