179 So.2d 349 (1965)
DAYTONA BEACH RACING AND RECREATIONAL FACILITIES DISTRICT, a body politic and corporate under the laws of the State of Florida, and the City of Daytona Beach, a Florida municipal corporation, Petitioners,
v.
C.S. PAUL, as Tax Collector for Volusia County, etc., Ray E. Green, as Comptroller of the State of Florida, Warren Jackson, as Tax Assessor for Volusia County, etc., and the County of Volusia, a political subdivision of the State of Florida, Respondents.
No. 33102.
Supreme Court of Florida.
June 30, 1965.
Rehearing Denied October 13, 1965.
*350 Starry & Thompson, Tallahassee, and Black, Cobb, Cole & Crotty, Daytona Beach, for petitioners.
Raymond, Wilson, Karl & Conway, Daytona Beach, for C.S. Paul, as Tax Collector and Warren Jackson, at Tax Assessor for Volusia County.
Charles W. Luther, Daytona Beach, for Ray E. Green, as Comptroller of State of Florida, and Volusia County.
ERVIN, Justice.
The Petitioners, the Daytona Beach Racing and Recreational Facilities District, a body politic under the laws of Florida, and the City of Daytona Beach, a municipal corporation of the State of Florida, seek our review by writ of certiorari of a decision of the District Court of Appeal, First District, viz., Daytona Beach Racing and Recreational Facilities District v. Paul (1963), 157 So.2d 156. The decision of the *351 District Court of Appeal affirmed a decree of the Circuit Court of Volusia County upholding tax assessments of Volusia County for the years 1960 and 1961 upon a City of Daytona Beach owned 374-acre tract of land leased by the City to the Daytona Beach Racing and Recreational Facilities District, which tract the District subleased to Daytona International Speedway Corporation, its speedway operating company. Said tract of land is used as a part of the facilities of the Daytona Beach International Speedway. It is not necessary that we further summarize the facts of the instant case since they are fully delineated in the opinion and decision of the District Court of Appeal reported in 157 So.2d 156.
The Petitioners rely primarily upon the case of State v. Daytona Beach Racing and Recreational Facilities District (Fla. 1958), 89 So.2d 34, to invoke our certiorari jurisdiction, contending that decision conflicts with the decision of the District Court of Appeal here sought to have reviewed.
Our study of the instant case and other authorites has resulted in our determining that a conflict of decisions exists and that we have jurisdiction to entertain the petition for writ of certiorari. In addition, we conclude we must reverse the decision of the District Court of Appeal on the merits.
State v. Daytona Beach Racing and Recreational Facilities District, supra, wherein the validation of proposed bonds of the District was affirmed, is decisive of the issues of this case. No authority would have existed in law for our affirming the validation of the proposed bonds of the District unless it was a public agency and its proposed bonds were a public issue and tax exempt. The District was created by Chapter 31343, Special Acts of 1955, in order to establish the Speedway and provide for its operation. The entire thrust of the Act is that the District is a public agency created to serve an express public purpose. In furthering this object, § 13 of Chapter 31343 expressly granted tax exemption to the lands and facilities owned or leased by the District and used in the operation of the Speedway facility.
This Court, speaking through Justice O'Connell, in State v. Daytona Beach Racing and Recreational Facilities District, supra, considered the following objection of the State to the District bond validation:
"[3] The appellant next argues that the construction and operation of a racing and recreational facility by the District would be improper in that such would not be a proper public purpose. * * *"
After discussing the contention of the State and the cases relied upon by it, the Court unequivocably held:
"* * * The public purpose here seems to be predominant and the private benefit and gain to be incidental."
The Court further commented:
"[4] The enabling act expressly stated its purpose was to further public purposes in promoting the economic, commercial and residential development of the District and the lower court recognized in its decree that such would be done in the proposed development of the District. Since the Legislature determined that public purpose would be served, we should not find to the contrary unless it be found the Legislature was not just and reasonable or was arbitrary. State v. City of Jacksonville, Fla., 53 So.2d 306; State v. Monroe County, 148 Fla. 111, 3 So.2d 754. This Court, in the recent case of State v. Inter-American Center Authority, Fla. 1955, 84 So.2d 9, decreed that construction of the Inter-American Cultural and Trade Center was a public purpose and that the imposition of taxes to pay for such was proper. The purpose of the Center was to increase trade and to strengthen cultural relations with other countries.

*352 "In the instant case the purpose of the facility is both to increase trade by attracting tourists and to provide recreation for the citizens of the District. We have on numerous cases approved as a public purpose the development of recreational facilities. See State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218; State v. City of Jacksonville, Fla., 53 So.2d 306; State v. City of Pensacola, Fla., 43 So.2d 340. Appellee's brief ably cites authorities in other jurisdiction which are in accord with the holdings of this Court on the matter. In State v. City of Miami, Fla., 41 So.2d 545, we upheld the selling of certificates to enlarge the Orange Bowl Stadium in Miami and appellant cites cases from several jurisdictions which also validated bonds for the construction of such recreational facilities. Therefore, it is our opinion that the development of the facility in question would serve a valid public purpose, and that the private benefit and gain would be incidental thereto." (89 So.2d 34, 37)
The latter portion of the opinion in that case contains a resume of the holdings in several cases where various projects and facilities were found to serve public purposes, although they produced secondary private benefits. We quote therefrom as follows:
"In State v. Board of Control, Fla., 66 So.2d 209, 210, we said
"`The mere fact that some one engaged in private business for private gain will be benefited by every public improvement undertaken by the government or a governmental agency, should not and does not deprive such improvement of its public character or detract from the fact that it primarily serves a public purpose. An incidental use or benefit which may be of some private benefit is not the proper test in determining whether or not the project is for a public purpose.'
"This court has in numerous instances approved the imposition of taxes as being an aid to a public purpose. State v. Inter-American Center Authority, supra; State v. City of Miami, Fla., 76 So.2d 294, dealing with an international trade mart (owned, however, by the city); C.V. Floyd Fruit Co. v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562, involving a tax on citrus fruit for advertising purposes; State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218, supra, upholding a tax for construction of an auditorium, stadium, boat basin and recreational center; State v. Dade County, Fla., 62 So.2d 404, where a warehouse and overhaul shop were to be constructed and then leased to airlines corporations and the revenue certificates were to be paid from rentals from such corporations; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402, where the construction of an office building by the City for rental purposes was upheld as a public purpose; State v. Escambia County, Fla., 52 So.2d 125, where revenue certificates were sold to construct recreational facilities which could be leased out to private enterprises. It can clearly be seen that in the above cases this Court did not hold the imposition of taxes or use of tax monies to be invalid because some private businesses profited thereby, rather this Court ruled that the tax was for valid purposes notwithstanding the incidental private gain for private businesses. * * *" (89 So.2d 34, 38)
Pruned to its essentials, the decision of the District Court of Appeal in the instant case makes different findings and reaches different legal conclusions patently contrary to those announced by this Court in State v. Daytona Beach Racing and Recreational Facilities District, supra. The District Court of Appeal found the Speedway is in reality a private venture and not a public purpose, and the 374-acre tract of *353 land is being used by the Speedway corporation for private profit. Predicated upon these findings and conclusions the District Court affirmed the tax assessment. These conclusions of the District Court are completely at variance with the determination of this Court in State v. Daytona Beach Racing and Recreational Facilities District, supra.
The decision below similarly conflicts with our decisions in Gwin v. City of Tallahassee, Fla., 132 So.2d 273; Wiggins v. City of Green Cove Springs, 159 So.2d 219, and several other cases decided by this Court.
It would be a matter of great inconsistency, if not bad faith, after declaring the Speedway facility a public or municipal purpose in the bond validation case in the broadest and most sweeping terms, to hold the decision below in the instant case does not conflict with the bond validation decision and that the tax exemption granted by the Legislature in favor of the lands and facilities utilized in the operation of the Speedway is no longer applicable because they have somehow lost their recognized attributes as public or municipal purpose lands or facilities. It is axiomatic that a public facility or project declared such by the Legislature and so recognized by the State's highest Court does not lose its tax exempt status where there has been no material change in its public nature or no legislative repeal of its exemption privilege. No substantial transmutation has occurred in the public character and nature of the Speedway District or in the use of its completed facilities since it was judicially declared to be a public or municipal purpose in the bond validation case up to the present time when the Speedway is in operation, so that it may no longer be considered a public or municipal purpose enjoying the usual tax exemption privileges accorded public ownerships and facilities, but instead is now a purely private venture. This Court in unmistakable language approved the public nature of the Speedway project. Implicit in this approval was recognition of the tax exempt status of the Speedway facilities. We cannot consistently gainsay it now.
This opinion could be greatly extended by pointing out the gist of many cases decided by this Court which in some important respect or another conflict with the decision of the District Court of Appeal. It is enough, however, to recall that the Daytona Beach International Speedway facility has been declared by the Legislature and by this Court to serve a predominantly public purpose and to refer to the holding in the factually analogous case of Gwin v. City of Tallahassee, supra, to the effect it is immaterial whether there is a difference between the terms "municipal purpose" and "public purpose," because in the setting of the facts of this case similarly as in Gwin v. City of Tallahassee, supra, the terms "municipal purpose" and "public purpose" have synonymous application in respect to the question of the validity of the tax exemption granted.
In Gwin v. City of Tallahassee, supra, the question there was whether the City of Tallahassee in Leon County was entitled to a tax exemption in Wakulla County as to property owned by the City, viz., an electric generating plant and distribution lines. In sustaining the City's right to tax exemption under the tax exemption statutes, this Court, speaking through Justice Drew, said:
"* * * We are urged, in construing this act, to draw a distinction between the words `municipal purpose' and `public purpose'. Generically, of course, there is a difference but, so far as the use of the words in this particular setting is concerned, we think it clear that they are both used in the same sense and that is one generally embraced within the broad meaning of public purpose. * * *"
It suffices to reiterate that Justice O'Connell, speaking for the Court in the Speedway *354 District bond validation case, spelled out with great perspicacity and broad understanding the community worth of the Speedway facility and its manifest public purpose as a community recreational asset and business stimulant. In positioning the Speedway facility in the public purpose or municipal purpose class, he cited many case examples which held that if the predominate purpose of a project or facility is public, its secondary private aspects will not destroy its public status. With remarkable anticipatory foresight he foreclosed in that opinion contrary contention of Respondents in this case by holding that even though the private Speedway corporation operates the Speedway facility most, if not all of the time of each yearly lease period for Speedway racing purposes to the exclusion of other uses by the District or the public, this would not defeat the overall public purpose of the project or change it into a private venture. We quote:
"In the instant case a private corporaation would be in a position to utilize private gain from the facility, but only for a portion of the year. Under the agreement between the District and the corporation, the corporation is given the use of the facilities to be constructed for a period of not less than six months in each year for the conduct of a schedule of motorized racing activities and attractions. The Commission [District] is to have the use of the facilities for its own programs for a period of not less than six months each year and at all other times when not scheduled for use by the Corporation. The corporation would conduct automobile racing events of international interest, as well as other attractions. Tourism, both as between the areas of our State and as between the States of this Nation, is a competitive business. The sand and the sun and the water are not sufficient to attract those seeking a vacation and recreation. Entertainment must be offered. Even ignoring its use by the District for periods aggregating one-half the year, or more, for other recreational and educational purposes for the public, the facility in question, considering the uses to which it will be adopted and their expected effect on the public welfare, is infinitely more a valid public purpose than would any of the schemes contemplated in the three instances cited above. The public purpose here seems to be predominant and the private benefit and gain to be incidental." (89 So.2d 34, 36) (Emphasis supplied.)
This Court's decision in the bond validation case is also decisive of all relevant issues involving the merits in the present case. This Court affirmed the validation of the proposed bonds of the District as a public issue, tax exempt. In reaching its decision in the validation case, it necessarily upheld the constitutionality of Chapter 31343, which included the public purpose character of the Speedway facility and its concomitantly accorded tax exemption. The sweeping but realistic language of this Court in the bond validation case leaves no doubt of the public purpose of the Speedway facility and its municipally oriented aspects which implicitly included the constituent tax exemption privilege enjoyed by public agencies. Under the authority of numerous cases decided by this Court, it lay within the legislative prerogative to grant the tax exemption to the Speedway District and the facilities necessary for the Speedway operation, having found and declared they would serve a valid public purpose. It would also be a matter of great inconsistency, if not bad faith, in deciding the merits and equities of this case, in view of the sweeping pronouncement in the bond validation case holding the Speedway facility serves a public purpose, upon which pronouncement those sponsoring and financing the Speedway facility undoubtedly relied, and after the District and its operating corporation have undergone much difficulty and assumed large obligations in *355 order to finance the construction of the Speedway facility and place it in successful operation, to judicially rationalize away the legislatively granted tax exemption.
To recapitulate, the decision of the District Court of Appeal attempts to distinguish the facts of the instant case from those involved in the bond validation case in order to predicate its decision upon a non-conflicting, changed factual situation. It stresses the fact the validated bonds could not be sold and that private financing in lieu was arranged primarily by the District entering contracts and executing a lease agreement with the Speedway operating corporation. However, it was contemplated from the beginning the Speedway racing operation would be conducted by a private corporation irrespective of whether the Speedway facilities were constructed with public or private funds. The original lease with the Speedway Corporation which was considered in the bond validation case provided the Speedway Corporation would control and operate the facility for six months each year for speedway racing purposes while the District reserved the remaining six months to use the facility for District purposes, including community or other public uses. The new and existing lease reduced the District's rights to the facility to a three-month period each year, with further provision the Speedway corporation could, if it desired, pre-empt the three months for speedway racing purposes. But as we have seen, the revising of the lease did not detract from the predominantly public purpose of the facility, which was the successful operation of the Speedway itself, pure and simple, as a tourist and business attraction to the area  a unique facility in the state which harmonized with customs of the City of Daytona Beach where automobile racing was conducted along the beach of the Atlantic Ocean opposite the city for many years past. The decision of this Court in the validation case went straight to the substance of the Speedway venture and held the public purpose of the facility was founded primarily upon the existence and successful operation of the racing facility itself as a community asset and not upon the division of the time in the lease for the use of the facility as between the District and the Speedway Corporation. The only other predicate upon which the District Court of Appeal sought to base non-conflict with the bond validation decision was its attempt to distinguish between "municipal purpose" and "public purpose." But as we have seen, in attempting to do so it made the conflict even more obvious and apparent, because this Court has appropriately held that in a case of this setting such "distinction is without a difference."
As stated many times, this Court should accord the legislative discretion great respect in its designation of those facilities and things which serve public purposes and its determination of objects and purposes that may be given tax exemptions within the meaning of the exemption provisions of the Constitution, and especially should deference be accorded where the Legislature may reasonably be presumed to have followed guiding principles enunciated in cases decided by this Court.
Like the Almighty in all things, the Legislature in certain mundane things "giveth and taketh away." Unless and until the Legislature repeals the tax exemption we hold it must stand. Its wisdom and policy in granting or continuing the exemption is now beyond our reach, inasmuch as we have in a proper case heretofore in unequivocal language aligned this Court with the legislative determination of the public nature of the facility.
The petition is granted and the decision of the District Court of Appeal is quashed, with directions that further proceedings herein be in accordance with this opinion and judgment.
*356 THORNAL, Acting C.J., and O'CONNELL and CALDWELL, JJ., concur.
HOBSON, J. (Retired), concurs specially with opinion.
HOBSON, Justice (Retired) (concurring specially).
Although I dissented, as I thought, rather vigorously in the case of Gwin v. City of Tallahassee (Fla.) 132 So.2d 273, I must concur in the foregoing opinion prepared by Mr. Justice Ervin.
In my dissent in Gwin I presented and supported essentially every point which has been made by counsel for the respondents herein. As a matter of fact I presented and supported points other than those which have been raised by respondents for consideration of my colleagues  all to no avail.
I am bound by the decision of the majority in Gwin v. City of Tallahassee, supra, and by this Court's decision in State v. Daytona Beach Racing and Recreational Facilities District (Fla. 1958) 89 So.2d 34. The challenged decision of the District Court of Appeal, First District is, in my judgment, in direct conflict on the same point of law with the decision of the Supreme Court in each of the abovementioned cases.
The attempt of the District Court of Appeal, First District, to distinguish the instant suit from the case of State v. Daytona Beach Racing and Recreational Facilities District, supra, is, as is suggested by Mr. Justice Ervin, weak indeed. Each of the distinguishing features apparently envisaged by the District Court of Appeal, as well as a combination of all of them, should be cast aside by use of the Latin expression de minimis non curat lex.
Basically and fundamentally the subject project has not changed character. The "public purpose" which this Court declared in the bond validation suit is still existent. That "public purpose" which has been so definitely determined is, without doubt, under the facts of this case, also a "municipal purpose."
ERVIN, J., concurs.