QUESTION: May state funds appropriated to the University of Florida be expended to improve an electrical distribution system originally installed by the university to serve its "sorority row" area?
SUMMARY: A university may properly expend public funds to improve a university electrical distribution system that services sorority housing when the improvements primarily benefit the public and incidentally benefit the sororities. In my June 28, 1976, letter to you, I concluded that the factual circumstances you described were not free from doubt and that the contemplated expenditure to improve certain university-related electrical distribution systems was probably improper. However, numerous facts have subsequently been brought to my attention that make it appropriate for me to reconsider this conclusion. Enclosed with your letter was a copy of a lease-purchase agreement between the State Board of Education and one of the sororities in question. This agreement, which you indicate is similar to the agreements entered into in the 1950's by all of the sororities whose houses are located in the sorority row area, provides for the lease by the sorority of certain State Board of Education property consisting of a parcel of land and a small dormitory-type building located thereon. The agreement also grants to the sorority an option to purchase the property, with legal title remaining in the State Board of Education until the full purchase price, including the costs incurred in financing construction of the building by the issuance of revenue certificates, is paid by the sorority. According to your letter, all of the sororities have exercised their options to purchase and are still paying their purchase prices. The legal title to the property remains in the State Board of Education. The sample lease-purchase agreement supplied by you provides that, even after the sorority completes purchase, the property will continue to be used as a university-approved housing facility and be subject to university regulations (Items XXIV 1. and 4.). The State Board of Education also retains a right of first refusal if, after completion of purchase, a sorority desires to sell the property (Item XXIV 6.). I have been informed that, since 1971, the university has certified that this sorority housing should be granted a tax-exempt status since it serves an essential university function. Also, the electrical distribution line in question is part of a main distribution system from a power substation to the respective sorority house electrical system that is individually connected to the house meter. The electrical line repair is only from the university power substation to the house meter as an integral part of the entire university electrical distribution system and not maintenance to a house. These facts were either not available to me in June or unclear from your letter.
Article VII of the sample agreement specifically sets forth the three elements that shall, in the aggregate, be the total purchase price. The second paragraph of Article VII(3) contains references to "the cost of the property" which implicitly rejects any conclusion that the article relates to anything other than the purchase price of the house. As such, the contract contains no reference to the university's responsibilities regarding the electrical distribution system. My June 28, 1976, conclusion was premised upon the assumption that the sororities, as beneficial owners of the subject property under the doctrine of equitable conversion, would be the primary beneficiaries of such expenditure. The additional facts that have been brought to my attention subsequent to June 28 illustrate that the improvements contemplated would be of primary benefit to the university distribution system through the upgrading of the same and the sororities would only be incidentally benefited thereby. Under such circumstances, the expenditure would probably be lawful. See Nohrr v. Brevard County Educational Facilities Authority,247 So.2d 304 (Fla. 1971); State v. Daytona Beach Racing and Rec. Facility Dist., 89 So.2d 34 (Fla. 1956); State v. Dade County,142 So.2d 79; State v. Jacksonville Port Authority, 204 So.2d 881. Moreover, since the primary beneficiary of this expenditure is the university, this expense would not be considered to be a "non-reimbursable cost of the property" as contemplated by Section VII(3) of the lease-purchase agreement.