NATHAN MAYO, Commissioner of Agriculture, v. ECKERSON FRUIT CANNERS, INC.

188 So. 781
Opinion Filed March 17, 1939
Rehearing Denied June 2, 1939

68

*George Couper Gibbs,* Attorney General, *H. E. Carter,* Assistant Attorney General, *William C. Pierce, Doyle E. Carlton, E. Glenn Grimes and Ed. R. Bentley,* for Appellant;

*George A. DeCottes,* for Appellee.

TERRELL, C. J.—The legislature of 1935 enacted Chapter 16862, Laws of Florida, herein referred to as the Growers' Cost Guarantee Law, prescribing conditions for the marketing, processing, and sale of citrus fruits  The Legislature of 1937 enacted Chapter 17777, Laws of Florida, herein referred to as the Bond and License Law, providing for the bonding and licensing of citrus fruit dealers and for other purposes.

The appellee is a canner of citrus fruits and was on September 1, 1938, licensed by the Commissioner of Agriculture under the Bond and License Law.  Pursuant to the Growers' Cost Guarantee Law, the Commissioner of Agriculture by and with the advice and consent of the Governor proclaimed the existence of a state of emergency in the citrus industry.  Pursuant to the proclamation of the Commissioner of Agriculture and the power vested in it under the terms of said act, the Florida Citrus Commission proceeded to and determined that the cost of production for a standard packed box of grapefruit for the current season was 32 cents and on the 16th of January, 1939, promulgated its resolution embodying such determination.

Appellee then evolved a form of contract for processing and marketing citrus fruits which it contends is not in violation of the terms of the Growers' Cost Guarantee Law or the resolution of the Florida Citrus Commission fixing the cost of production of citrus fruits. The Commissioner of Agriculture took the position that said contract was in violation of the Growers' Cost Guarantee Law and requested appellee to refrain from operating under it and threatened revocation of its license as a canner and dealer in citrus fruits if he refused to do so.

The appellee, as complainant, then filed its bill of complaint in the Circuit Court seeking to restrain the Commissioner of Agriculture from interfering with it in the operation of its canning plant under the terms of said contract and from revoking its license as a canner and processor of citrus fruits. A temporary restraining order was granted and the Florida Citrus Commission and Florida Growers, Inc., were permitted to intervene. Motions to dissolve the temporary restraining order and to dismiss the bill of complaint were denied and this appeal was prosecuted from that decree.

The question presented is whether or not the contract evolved by appellee for processing and marketing citrus fruits and under which it proposes to operate its canning business is violative of the Growers' Cost Guarantee Law and the resolution of the Florida Citrus Commission promulgated thereunder. The constitutional validity of the act is not before us and is not considered.

The answer to this question is resolved by the interpretation given to the Growers' Cost Guarantee Law, and the pertinent part of which is that part of Section Three reading as follows:

" * * * the Florida Citrus Commission shall determine and record in permanent form annually the average reason-

able cost per standard packed box of producing citrus fruit and every contract, agreement, plan or arrangement with the grower by or under which his citrus fruit shall be bought, marketed, or processed shall be held to require that the person, firm, corporation, or association buying, marketing or processing said citrus fruit shall in any event pay the grower said cost of production, to be ascertained by multiplying the said cost per standard packed box as shown by the record of the Commission current at the time the contract, agreement, plan or arrangement with the grower shall be made, by the number of packed boxes so bought, marketed, and processed during the season or under the particular contract, agreement, plan or arrangement if for less than a marketing season. Any contract, plan, scheme or device whereby it shall be attempted to preclude the grower from recovering such cost of production shall to that extent be held to be unlawful and against the public policy of this State, but in all other respects and particulars contracts of sale, marketing and processing shall be valid and binding and the terms thereof shall measure the rights of the respective parties."

The cost of production for the current season as determined by the Florida Citrus Commission was 32 cents per standard packed box. A reading of the title, preamble, and contents of the Growers' Cost Guarantee Law, in connection with the quoted part convinces us that the Legislature intended to require that every contract, agreement, plan, or arrangement with the grower for buying, marketing, or processing his citrus fruits should return to him not less than the cost of production and that any such contract, scheme, plan, or device failing in this shall be held to be unlawful and to that extent against the public policy of the State. The provisions of the law on this point were as

effectively in the contract as if they had been manually written there.

The Chancellor rejected the contention of appellant·that the Growers' Cost Guarantee Law required every contract for the purchase, sale, or processing of citrus fruit to guarantee the grower the cost of production as fixed by the Florida Citrus Commission. He held ·on the other hand that said act condemned only such contracts as attempted to preclude the grower from recovering the cost of production and that the contract under review did not have that effect.

The Chancellor, in other words, held that only such contracts as affirmatively show on their face that the grower would not recover 32 cents per box for his grapefruit were condemned by the act and that since the contract in question did not so show, it should not be held to violate the law. If this interpretation is correct, the Chancellor should be upheld, but we think this holding was erroneous. The very purpose of the act was to guarantee the grower a definite and fixed sum for his citrus fruit; the name, the title, the preamble, and all its provisions point to this and any contract or device which fails of such purpose is banned by it.

The contract drawn in question does not guarantee the grower anything. In fine, it requires him to furnish his grapefruit to the canner who proceeds to process and can it. The canner furnishes all processing facilities, labor, and materials and charges the grower the cost of processing and packing. There is also an additional overhead cost which is charged to him. The canner will hold the processed product for ninety days without cost to the grower during which time he may give the canner shipping instructions for not less than car lots but after this, the canner proceeds to sell at the market price and deducts the cost of processing plus any advances made to the grower and in addition

thereto two per cent for services. Any amounts that may be left are paid to the grower.

Ten days after processing begins, the canner pays the grower an agreed amount based on the number of containers processed. Such agreed price may be any amount based on market conditions. If it is less than 32 cents per box and the sales price which it eventually brings is not sufficient to make the difference between the advance and the 32·cents per box fixed by the Florida Citrus Commission, the canner is under no obligation to make up this difference to the grower. In other words, the grower gets the amount advanced in the first instance and what is left from the sales price after all deductions are made. It may be more or less than 32 cents per box.

As we interpret the law, such a contract imposes every hazard on the grower and while it may return to him the cost of production, it may not return him anything. If it returns anything under the cost of production, the effect of it is a plan, scheme, or device to prevent the grower from recovering such cost.

It is accordingly in violation of the Growers' Cost Guarantee Law and cannot be enforced. This being our view, it follows that the decree below must be and is hereby reversed.

Reversed.

WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.