275 So.2d 231 (1973)
George F. PLATTS et al., Appellants,
v.
DIVISION OF BOND FINANCE OF the DEPARTMENT OF GENERAL SERVICES of the State of Florida, Etc., Appellee.
No. 42355.
Supreme Court of Florida.
March 7, 1973.
Rehearing Denied April 18, 1973.
Philip H. Elliott, of Elliott, Tindell & Armstrong, Daytona Beach, for appellants.
Arnold L. Greenfield and Robert E. Niro, Tallahassee, for appellee.
PER CURIAM.
This is an appeal of a final judgment of the Circuit Court of the Second Judicial Circuit of Florida validating an issue of $7,000,000 state of Florida, Full Faith and Credit, Volusia County Bridge Bonds to finance a state highway bridge project in Volusia County, Florida.
Appellants raise certain objections to the validation. We discuss them briefly hereinafter.
The location of the subject bridge is a matter of discretion vested by law in administrative boards by the Legislature. Compare Pirman v. Florida State Improvement Commission, Fla., 78 So.2d 718. No abuse of discretion or fraud in the location of the subject bridge is shown.
There is no showing there was any failure to satisfy the law regarding the giving of any prior notice to the public concerning the location of the bridge project or in formulating the local and state agreements concerning its financing. Compare Kelton v. Division of Bond Finance, Fla., 261 So.2d 813.
The $7,000,000 issue of bonds is payable primarily from rentals secured by a lien on the net tolls of the project and the uncommitted eighty per cent surplus *232 gasoline tax funds accruing to the Department of Transportation for use in Volusia County, Florida, under the provisions of Section 9(c), Article XII, Constitution of the State of Florida, F.S.A., in the manner provided in the lease-purchase (rental) agreement between the Division of Bond Financing of the Department of General Services of the State of Florida as Lessor, and the Department of Transportation of the State of Florida as Lessee. No referendum approving such an issue is necessary. See State v. Division of Bond Financing, Fla., 246 So.2d 102.
None of Appellants' objections to the validation appear to have any legal basis. Included in their objections are political and policy considerations, the wisdom of the exercise of administrative discretion in regard to the location and financing of the bridge project, as well as questions relative to the ecological suitability of the bridge project. However, these are areas of consideration lying beyond our own legitimate judicial province to intrude or to substitute our judgment for what has been decided in the legislative and executive spheres of authority.
Affirmed.
CARLTON, C.J., and ERVIN, ADKINS, BOYD and McCAIN, JJ., concur.
DEKLE, J., dissents with Opinion.
ROBERTS J., dissents and agrees with DEKLE, J.
DEKLE, Justice (dissenting):
This is no routine bond validation. It represents the arbitrary action of an elected Volusia County Council to bond another $7 million bridge, in addition to the present 7 bridges, across the Halifax River at Flomich Street (one block north of 15th Street) in Holly Hill adjoining Daytona Beach. This is a quiet residential district containing a shaded oak park on the edge of the beautiful Halifax, in an area which (along with one other location) had just been overwhelmingly rejected for a bridge by a recent vote of the people on an earlier proposed bond issue.
The necessity for the bridge in such a location appears questionable from the record. In fact, it is pointed out that this approved "high rise", 4-lane, major artery on remote 2-lane Flomich Street in an area of numerous residences, will not only create displacement and environmental havoc, but to be useful will require the later construction in the millions of dollars of additional roads for access to the bridge. Such essential arterial streets are not in the instant bond issue but are admittedly necessary for the success of the toll bridge for payment of the bonds. These are factors completely overlooked or ignored by this routine validation. Such perfunctory approval ignores the realities and facts of life involving the public and their personal lives and community where it is not mandated by reasonable necessity.
It is simple for the State simply to refer to its citizens' protests as "narrow personal interests", as "self-appointed and self-styled `defenders of the environment' who cannot be permitted to substitute their judgment and preferences for the judgments made by lawfully constituted and responsible administrative bodies" and then to dismiss their contentions with the statement: "Of course, in the contemporary era, the vogue is to cloak any such personal opinions in the idealistic rhetoric of environmental protection." To the people, this is a very real threat and one which is against their personal interests and a denial of their property rights which demands full hearing and consideration of their interests. That is what representative government is supposed to mean  to represent the best interests of those represented.
It is asserted that the Council's action was in fact contrary to the very recommendations of its consulting engineers not *233 to place a bridge at this location and that they specifically recommended against it. By definition, such action is arbitrary. United States v. Lotempio, 58 F.2d 358, 359 (D.C. 1931).
The Council, following public disapproval, now simply proceeds to bond one of the two rejected bridge sites under the new public bond issue method now provided by Fla. Const. art. XII, § 9(c), through the State Division of Bond Financing which has no requirement for referendum. This is of course a legal procedure which may be followed but when it is done by a Council in the face of an immediate rejection of the same subject matter for a bond issue which ultimately the people must pay, it raises a question of good faith and of acting arbitrarily and capriciously sufficient to give rise to a question of constitutional due process as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I, §§ 1, 2 and 9 of our Florida Constitution (1968).[1] These protections extend to every exercise of governmental power at every level, even to a County Council. Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 So. 1001 (1908); Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1880).
Such arbitrary governmental action constitutes a denial of fundamental fairness and justice against which due process stands as the constitutional protection of the individual. Kinsella v. United States, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960); Chicago B. & Q.R. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897).
Appellants' complaint is a lack of adequate notice, particularly in the initial resolutions for the new bridge. Such notice is the principal ingredient of due process and when this is lacking, it undermines the entire procedure which follows. It is not enough thereafter for the State to say as it argues that "legal requirements" in pursuing the bonds have been duly met when in fact there was no initial adequate opportunity to be heard on the subject.
This is not a case of substituting the protestors' opinion for that of their elected representatives but one of an humble plea of the people to be heard and to have some voice to which a responsible Council might respond in considering their interest. An administrative approval by the people's elective representatives in a summary and arbitrary manner  without due process  is not what was intended to meet the basic requirements of due process as a predicate for an otherwise legally authorized bond issue.
We are concerned here with the matter of fundamental due process under these circumstances. The action here, without regard to a proper concern for the needs and wishes of the community, demonstrates the continuing difficulty of the people in trying to cope with government, and the resulting frustration and distrust which it engenders. So long as the people's elected representatives act arbitrarily and contrary to the clearly expressed wishes of the electorate, so long will continue the lack of faith in government.
I respectfully dissent.
ROBERTS, J., agrees.
NOTES
[1] "Section 1. Political power.  All political power is inherent in the people... . Section 2. Basic rights.  All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property ... . * * * Section 9. Due process.  No person shall be deprived of life, liberty or property without due process of law... ."