277 So.2d 769 (1973)
Gerri BETZ et al., Appellants,
v.
JACKSONVILLE TRANSPORTATION AUTHORITY, a Body Politic and Corporate, et al., Appellees.
No. 43145.
Supreme Court of Florida.
April 11, 1973.
Rehearing Denied June 11, 1973.
*770 J.W. Harrell, Harrell & Perrine, Jacksonville, for appellants.
William M. Madison, T. Edward Austin, Jr., and Ralph W. Nimmons, Jr., John B. Chandler, Jr., and J. Grover Henderson, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellees.
ERVIN, Justice.
This is an appeal from a final judgment in favor of Appellees (defendants) dismissing Appellants' (plaintiffs) complaint as amended for failure to show any right to relief.
The record proper reflects we have jurisdiction of the appeal because Appellants raised questions concerning the validity of a controlling statute, i.e., F.S. Ch. 349, F.S.A., as it was applied in this case, and concerning the construction of a provision of the State Constitution: Article VII, Section 10, F.S.A. These questions were passed upon by the trial judge adversely to the positions taken thereon by Appellants in the cause.
We affirm the trial judge.
The salient facts of the case are: In 1971 the City of Jacksonville tentatively decided that it should take over the private bus transportation system operating therein. An application for available subsidies was filed with the Urban Mass Transportation Administration (UMTA) of the U.S. Department of Transportation. A feasibility study of the proposed project was made. The City determined it would serve the public interest if the private bus system was acquired for the public. It agreed to cooperate with the Jacksonville Transportation Authority in the acquisition.
Pursuant to this determination, negotiations were entered into in May 1972 among the Jacksonville Transportation Authority (a body politic and corporate under F.S. Ch. 349, F.S.A.), acting on behalf of the public, City Coach Lines, Inc., and Jacksonville Coach Company (the private corporations), on behalf of the private bus system. Proposed purchase and management contracts were drafted to formally consummate the acquisition and provide for the management of the bus system operation during a transitional period.
While these negotiations were under way, appellants Gerri Betz, W. Harvey Cobb, and Lester L. Harrold, Jr., as plaintiffs, brought this suit on their own behalf and as a class suit for other citizens of the City of Jacksonville, seeking injunction and other relief to avoid the purchase of the bus system.
Prior to the filing of plaintiffs' suit, the City Council of Jacksonville had appropriated $850,000 as the City's share of the purchase price. The State Department of Transportation had granted the Jacksonville Transportation Authority the sum of $885,458, representing one sixth of the project cost, as the State's agreed participation.
In addition, the Jacksonville City Council had appropriated $900,000 and made this sum available to the Authority in order to offset an anticipated deficit in the operation by the Authority of the bus system in the first year, which would result from a contemplated lowering of fares, new routes, and new services.
The plaintiffs' (Appellants) complaint charged the Authority with acting in bad faith amounting to abuse of discretion, alleging the bus system was worthless and that it was improvident for the Authority to employ Coach Company to manage the bus system because under its private management the system had lost money in 1970 and 1971.
Allegations were contained in the complaint that the determination to purchase the private bus system was contrary to Article VII, Section 10, State Constitution, in that the proposed purchase and management contracts constituted illegal lending of public credit to private corporations that necessarily would involve use of the City's *771 taxing power to protect the public's property rights in the bus system, if acquired. There were allegations that the Authority's application of Ch. 349 in proposing to enter the management contract was constitutionally unauthorized. Plaintiffs alleged the consummation of the purchase and management contracts would deny them due process and equal protection of law.
Extensive testimony pro and con the validity of the purchase and management plans was adduced before the trial judge. He found the proposed transaction to be in the public interest and that it followed precedents and patterns of similar public acquisitions of bus systems in other large cities in the nation. It was developed at the hearing that the Congress and the Florida Legislature had each provided statutory authority and appropriated funds for such acquisitions.
Appraisal evidence indicated that, far from being worthless, the bus system property was worth the consideration to be paid.
The management fee, totalling $292,500 for the first year's operation ($180,000 reimbursement to Coach Lines for its allocated common costs of operating Coach Company together with a $112,500 management fee) was determined to be reasonable by the trial judge.
It was brought out in the evidence that upon consummation of the purchase the Authority is to receive a Federal grant of $3,539,566 allowed by UMTA, which is two thirds of the estimated gross costs of the acquisition project, including $2,000,000 for the purchase of 45 new buses.
The estimated loss of private tax revenues to the City from the bus companies during the first year after the purchase was found to be only $9,822.11, instead of $249,481, as Appellants claimed, which latter figure included all taxes, ad valorem, licenses, and excises theretofore annually payable by the bus companies to all recipients, both state and federal.
It was indicated by the evidence that "85% of the passengers of mass transit in the United States ride on publicly owned vehicles."
The management agreement remains in effect through September 30, 1974, after the sale, and for two years thereafter unless either party gives the other 90 days' written notice of termination prior to the end of the original or any renewal term thereafter. In the first and second years of renewal operation, the annual management fee to Coach Company is limited to $180,000 and $189,000, respectively.
We find no basis in the evidence for disturbing the findings of the trial judge, who refused to enjoin consummation of the bus system purchase or the execution of the purchase and management contracts. Nor do we find any unconstitutional application of Ch. 349 or any improper construction by the trial judge of any pertinent provision of the State or Federal constitutions, including Article VII, Sections 10 and 12, State Constitution, in the determination of this cause.
F.S. Section 349.04(2)(k), F.S.A., permits the Authority to pledge the revenues of the Authority as security for its obligations. F.S. Section 349.04(2)(g)1, F.S.A. authorizes the Authority to borrow money and issue bonds and secure payment thereof by a pledge of its revenues.
The management contract, though extending beyond one year, does not violate Section 10 of Article VII, or F.S. Section 349.04(3), F.S.A., which proscribe the giving or lending credit to private firms or corporations. It furthers a public purpose primarily and only incidentally benefits a private corporation. See Nohrr v. Brevard County Educational Fac. Auth., Fla. 1971, 247 So.2d 304; State v. Daytona Beach Racing and Rec. Fac. Dist., Fla. 1956, 89 So.2d 34; State v. Dade County, Fla., 142 So.2d 79, and State v. Jacksonville Port Authority, Fla., 204 So.2d 881.
*772 The Authority is contracting for designated expert services of a private company for transitional managerial purposes to extend for a limited period subject to cancellation by the Authority, for which it is to pay stipulated fees. These fees are to be paid only from revenues legally accruing to the Authority. They are not charges against the revenues or taxing authority of the City of Jacksonville.
If the management contract either directly, indirectly, or contingently bound the City of Jacksonville or the citizens thereof to pay the deferred management fees from ad valorem revenues instead of from the operational revenues and the funds heretofore appropriated and allocated to the Authority for the acquisition and operation of the bus system, the same would be invalid in the absence of a requisite approving referendum vote. See Nohrr v. Brevard County Education Fac. Auth., supra, 247 So.2d at 309.
We do not find anything in the management or purchase contracts that constitutes a scheme or device of the kind denounced in Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356, to pledge the public credit or taxing power. There is nothing in these contracts creating a mortgage or lien obligation upon the bus system properties or upon the bus system revenues which would ultimately entitle City Coach Lines, Inc. or Jacksonville Coach Company or others the right to bring foreclosure or receivership proceedings.
These companies are not given any right in these contracts to look to any other public body to pay any of the sums stipulated in said contracts. Payments under these contracts are to be made by the Authority from the operating earnings of the bus system and from the described grants of funds already appropriated and allocated to the Authority. These contracts do not violate Section 12 of Article VII, State Constitution, by providing for the payment of obligations maturing more than twelve months after their incurrence from the proceeds of ad valorem tax revenues.
We do not find that the two contracts under consideration either directly or indirectly or contingently violate the prohibition of F.S. Section 349.04(3), F.S.A., that the Authority's obligations shall not be obligations of the State or any political subdivision, except the Authority itself.
In sum, we find that the purchase of the bus system is to be a completed transaction consummated with the use of duly granted and appropriated federal, state, and city revenues, and is not a purchase on a deferred basis requiring the issuance of bonds; that the aid of the City of Jacksonville provided through the use of municipal funds was for the public acquisition and operation of the bus system and the same was duly authorized by law; that such purchase was an acquisition predominantly for public purposes and did not constitute an extending of public funds or credit to aid private corporations; that the management contract and the fees to be paid thereunder extending over a period of some three years were to employ expert managerial service for the successful operation of the bus system through the transitional period from private to public ownership; and that such management fees are payable only from the revenues of the Authority and not otherwise. We find no illegality in any of these related actions.
Affirmed.
CARLTON, C.J., and ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.
ROBERTS, J., dissents with opinion.
ROBERTS, Justice (dissenting).
Section 10, Article VII, Constitution of Florida provides:
"Pledging credit.  Neither the state nor any county, school district, municipality, *773 special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person;..."
and in my opinion the plan of operation sub judice does that in violation of the Constitution.