278 So.2d 614 (1973)
STATE of Florida, Etc., Appellant,
v.
DIVISION OF BOND FINANCE OF the DEPARTMENT OF GENERAL SERVICES, Etc., Appellee.
No. 43353.
Supreme Court of Florida.
May 30, 1973.
*615 Harry Morrison, State's Atty., for appellant.
Arnold L. Greenfield and Robert E. Niro, Tallahassee, for appellee.
ROBERTS, Acting Chief Justice.
This cause is before us on direct appeal from a final judgment of the Circuit Court of the Second Judicial Circuit in and for Leon County, validating and confirming the issuance of State of Florida Full Faith and Credit Pollution Control Bonds, Series A, in the aggregate principal amount of not to exceed $58,900,000. We have jurisdiction by direct appeal pursuant to Article V, Section 3(b)(2), Florida Constitution, F.S.A.
After summarizing the evidence in a lengthy and well-reasoned order and after setting out in detail the compliance with constitutional and statutory provisions, the Circuit Court properly concluded as evidenced by the record before us that all requirements and provisions of the Constitution and laws of the State of Florida pertaining to proceedings in the above-entitled manner have been strictly followed, specifically including but without limitation the requirements and provisions of Article VII, Section 14 of the Florida Constitution.
This is a case of first impression seeking to validate State Full Faith and Credit Bonds issued pursuant to Article VII, Section 14, Florida Constitution, and Section 403.1834, Florida Statutes, F.S.A. There were no intervenors or objections from private citizens. Only the State Attorney sought to show cause why the bonds authorized should not be validated.
This proceeding is anchored to Article VII, Section 14, Florida Constitution, which was adopted in 1970 and which provides:
"Bonds for pollution control and abatement facilities. 
(a) When authorized by law, state bonds pledging the full faith and credit of the state may be issued without an election to finance the construction of air and water pollution control and abatement and solid waste disposal facilities (herein referred to as `facilities') to be operated by any municipality, county, district or authority, or any agency thereof (herein referred to *616 as `local governmental agencies'), or by any agency of the State of Florida. Such bonds shall be secured by a pledge of and shall be payable primarily from all or any part of revenues to be derived from operation of such facilities, special assessments, rentals to be received under lease-purchase agreements herein provided for, any other revenues that may be legally available for such purpose, including revenues from other facilities, or any combination thereof (herein collectively referred to as `pledged revenues'), and shall be additionally secured by the full faith and credit of the State of Florida.
(b) No such bonds shall be issued unless a state fiscal agency, created by law, has made a determination that in no state fiscal year will the debt service requirements of the bonds proposed to be issued and all other bonds secured by the pledged revenues exceed seventy-five (75) per cent of the pledged revenues.
(c) The state may lease any of such facilities to any local governmental agency, under lease-purchase agreements for such periods and under such other terms and conditions as may be mutually agreed upon. The local governmental agencies may pledge the revenues derived from such leased facilities or any other available funds for the payment of rentals thereunder; and, in addition, the full faith and credit and taxing power of such local governmental agencies may be pledged for the payment of such rentals without any election of freeholder electors or qualified electors.

(d) The state may also issue such bonds for the purpose of loaning money to local government mental agencies, for the construction of such facilities to be owned or operated by any of such local governmental agencies. Such loans shall bear interest at not more than one-half of one per cent per annum greater than the last preceding issue of state bonds pursuant to this section, shall be secured by the pledged revenues, and may be additionally secured by the full faith and credit of the local governmental agencies.
(e) The total outstanding principal of state bonds issued pursuant to this section 14 shall never exceed fifty per cent of the total tax revenues of the state for the two preceding fiscal years." (emphasis supplied)
Section 403.1834, Florida Statutes, F.S.A. (Chapter 70-270, Laws of Florida) the required implementing statute to the aforecited constitutional provisions sets out the following procedures:
"State bonds to finance facilities. 
(1) The issuance of state bonds to finance the construction of air and water pollution control and abatement and solid waste disposal facilities, payable primarily from the pledged revenues provided for by § 14, Art. VII of the state constitution or from such pledged revenues and the full faith and credit of any county, municipality, district, authority, or any agency thereof, and pledging the full faith and credit of the State of Florida as additional security, is authorized, subject and pursuant to the provisions of § 14, Art. VII of the State constitution, the provisions of the state bond act, §§ 215.57-215.83, as amended, and the provisions of this section.
(2) The state board of administration is designated as the state fiscal agency to make the determinations required by § 14, Art. VII of the state constitution in connection with the issuance of such bonds.
(3) The amount of the state bonds to be issued shall be determined by the division of bond finance of the department of general services. However, the total principal amount issued shall not exceed one hundred million dollars in any state fiscal year.
(4) The facilities to be financed with the proceeds of such state bonds shall be *617 determined and approved by the department of pollution control, and may be constructed, acquired, maintained, and operated by any county, municipality, district, or authority, or any agency thereof, or by said department.
(5) The department of pollution control and the division of bond finance of the department of general services are hereby authorized to enter into lease-purchase agreements between such departments or to enter into lease-purchase agreements or loan agreements between either of such departments and any county, municipality, district, or authority, or any agency thereof, for such periods and under such other terms and conditions as may be mutually agreed upon by the parties thereto in order to carry out the purposes of § 14, Art. VII of the state constitution, and this section.
(6) The department of pollution control shall have power to fix, establish, and collect fees, rentals, or other charges for the use or benefit of said facilities, or may delegate such power to any county, municipality, district, authority, or any agency thereof under such terms and conditions and for such periods as may be mutually agreed upon.
(7) It is found and declared that said facilities will constitute a public governmental purpose necessary for the health and welfare of all the inhabitants of the state, and none of said facilities or said state bonds or the interest thereon shall ever be subject to taxation by the state or any political subdivision or agency thereof."
Against this background, appellant poses two objections to the validation of the bonds in question. These objections relate to the requirement of elections when pledging the full faith and credit of the State and of local political subdivisions. The essence of both points on appeal advanced by appellant is that Article VII, Sections 11(a) and 12(a), Florida Constitution, generally require a vote of the electors to pledge the full faith and credit of the State or of local political subdivisions.[1] Article VII, Section 14, Florida Constitution, being enacted subsequent to the enaction of Article VII, Section 11(a) and 12 (a), is a specific exception thereto. It is a fundamental rule of construction that, if possible, amendments to the Constitution should be construed so as to harmonize with other constitutional provisions, but if this cannot be done, the amendment being the last expression of the will of the people will prevail. An amendment to the Constitution, duly adopted, is the last expression of the will and intent of the law-making power and prior provisions inconsistent therewith or repugnant to the amendment are modified or superseded to the extent of inconsistency or repugnancy. Advisory Opinion to Governor, 152 Fla. 686, 12 So.2d 876 (1943), Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892 (1944), *618 Board of Public Instruction of Polk County v. Board of Commissioner's of Polk County, 58 Fla. 391, 50 So. 574, Jackson et al. v. Consolidated Government of City of Jacksonville, 225 So.2d 497 (Fla. 1969).
Furthermore we note that all provisions of the Constitution bearing upon a particular subject matter are to be brought into view and to be so interpreted as to effectuate the great purpose of the instrument. A constitutional amendment becomes a part of the Constitution and must be construed in para materia with all of those portions of the Constitution which have a bearing on the same subject. Advisory Opinion to Governor, supra, Sylvester v. Tindall, supra, Lewis v. Florida State Board of Health, 143 So.2d 867 (Fla.App. 1962).
Article VII, Section 14, modified Sections 11(a) and 12(a) (requiring a vote of electors) so as to create a special exception thereto. In Gray v. Golden, 89 So.2d 785 (Fla. 1956) which involved a proposed constitutional amendment providing home rule for Dade County in local affairs, this Court opined that where an amendment limits or modifies other provisions of the Constitution, it does so only to the extent defined in the amendment, and that ". . such limitations are in harmony with constitutional amendments generally and except as to the `purpose' of the amendment, the parent provision continues in force." It is obvious that in adopting Article VII, Section 14, by a statewide election, the sovereign people of this State intended to provide an alternative method of financing state bonds without a referendum in certain particular instances. The people of this State created a specific exception to the requirement of an election in this type of bond validation proceeding.
An analagous situation was presented to this Court in State v. Division of Bond Finance of the Department of General Services, 246 So.2d 102, which was also a case of first impression regarding the revision of the Florida Constitution permitting the state's credit to be pledged for highway bond issues without referendum. The constitutional provision therein involved was Article XII, Section 9(c) which provides in pertinent part:
"When authorized by law, state bonds pledging the full faith and credit of the state may be issued without any election: (i) to refund obligations secured by any portion of the `second gas tax' allocated to a county under Article IX, Section 16, of the Constitution of 1885, as amended; (ii) to finance the acquisition and construction of roads in a county when approved by the governing body of the county and the state agency supervising the state road system; and (iii) to refund obligations secured by any portion of the `second gas tax' allocated under paragraph 9(c)(4)."
In State v. Division of Bond Finance, supra, this Court explicated:
"The question before us is whether the proceedings taken by the Division of Bond Finance and the other State agencies in connection with the proposed financing program, purporting to pledge the full faith and credit of the State of Florida, comply with the requirements of the Florida Constitution as contained in Article XII, Section 9(c), and in Article VII, Section 11, for the issuance of bonds to be secured by such a pledge.
"This is the first case dealing with such subject mattter to be brought before the courts, since the revision of the Florida Constitution permitting the State's credit to be pledged for highway bond issues under the conditions specified therein.
"The learned trial judge held:
`The Bonds shall be "State Bonds" within the meaning of said Section 9 (c), Article XII, of the Constitution of the State of Florida and will be secured by a valid pledge of the full faith and credit of the State of Florida in the manner provided by such Resolution *619 and Lease-Purchase Agreement.
`The issuance of the Bonds is not required, by any of the provisions of the Constitution or laws of the State of Florida, to be approved by the qualified electors who are freeholders, or by the qualified electors, residing in the State of Florida, Escambia County, or any other political subdivision of the State of Florida, and the Bonds are not subject to the limitations and conditions provided by Subsections (a) and (c) of Section 11 of Article VII of the Florida Constitution.'
"We agree with the court below that in adopting Article XII, Section 9(c), the people intended to provide an alternative method of financing state bonds without a referendum in certain particular instances." at p. 103.
See also Platts et al. v. Division of Bond Finance, 1973, 275 So.2d 231. We agree with the lower court's finding that:
"The Division of Bond Finance of the Department of General Services and the Department of Pollution Control each have authority to agree with the Local Agencies that if the proceeds of the Series A Bonds and the proceeds of certain grants to be made by the United States of America to the Local Agencies for the purpose of completing the Projects of each of the Local Agencies, together with other monies legally available to each of the Local Agencies, are not sufficient to complete the Projects, that the Division of Bond Finance will enter into additional loan agreements with the Local Agencies for the purpose of furnishing sufficient monies to the Local Agencies to complete the various Projects; and, that the Local Agencies in such event may be required to pledge the full faith and credit of the Local Agencies to the State of Florida, without any election of freeholder electors or qualified electors, and such pledge does not violate and such agreement is not violative of Article VII, Section 11, of the Florida Constitution nor of Article VII, Section 12, of the Florida Constitution, inasmuch as Article VII, Section 14 of the Florida Constitution specifically authorizes the Local Agencies to secure the repayment of any loans by the State Agencies to the Local Agencies by the full faith and credit of the Local Agencies without any election of freeholder electors or qualified electors and said Article VII, Section 14, being enacted subsequent to the enaction of the said Article VII, Sections 11 and 12, is a specific exception thereto, and the said Local Agencies may, under the conditions set forth in the Agreement with the State Agencies, pledge their full faith and credit as additional security for the repayment of any additional loans made by the State Agencies. The issuance of the said Series A Bonds is not required to be approved by a vote of the freeholder electors or qualified electors of the State of Florida, inasmuch as such issuance of bonds is specifically authorized by the said Article VII, Section 14 of the Florida Constitution, without any such election of freeholders or qualified electors."
Having carefully examined the record in this case, and it appearing that the trial court was correct in validating the bonds, his judgment is 
Affirmed.
ERVIN, ADKINS, BOYD and McCAIN, JJ., concur.
NOTES
[1] Article VII, Section 11(a), Florida Constitution, provides:

"State bonds; revenue bonds. 
(a) State bonds pledging the full faith and credit of the state may be issued only to finance or refinance the cost of state capital projects upon approval by a vote of the electors; provided state bonds issued pursuant to this subsection (a) may be refunded without a vote of the electors at a lower net average interest cost rate. The total outstanding principal of state bonds issued pursuant to this subsection (a) shall never exceed fifty per cent of the total tax revenues of the state for the two preceding fiscal years."
Section 12(a) provides:
"Local Bonds.  Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only: (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; .. ."