281 So.2d 201 (1973)
STATE of Florida and the Taxpayers, Property Owners and Citizens Thereof, Including Non-Residents Owning Property or Subject to Taxation Therein, Appellants,
v.
INTER-AMERICAN CENTER AUTHORITY, a Public Corporation and an Agency of the State of Florida, Appellee.
No. 43883.
Supreme Court of Florida.
July 27, 1973.
*202 Richard E. Gerstein, State's Atty., and Milton Robbins, Asst. State's Atty., for appellants.
Robert A. Ware, Jr., Miami, for appellee.
Charles A. Gould, Jr., Miami, as amicus curiae.
ERVIN, Justice.
This is a direct appeal from a final judgment of the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade County, validating and confirming the issuance of Inter-American Center Authority Initial Development Revenue Bonds in the amount of $203,332,512.33.
Inter-American Center Authority was created by Chapter 554, F.S., as a special instrumentality of the State for the limited purpose of constructing an Inter-American Cultural and Trade ("Interama") Center project at a specific location in Dade County, Florida. The powers granted the Authority are limited primarily to financing, constructing, and operating the Interama Center, and planning and developing the State's participation in the bicentennial celebration of the American Revolution.
Pursuant to the authority granted under Chapter 554, F.S., and Section 11(c) of Article VII, State Constitution, F.S.A., Interama as a state agency has adopted a resolution providing for the issuance and sale of revenue bonds for the purpose of obtaining monies in the aggregate principal amount of $203,332,512.33 to pay the financing cost of the Center project. The Circuit Court, in a learned and comprehensive opinion by Judge Falk rendered on May 4, 1973, in Case No. 73-7899, Eleventh Judicial Circuit of Florida in and for Dade County, discussed constitutional and statutory provisions governing the bond validation in this instance and concluded:
"The issuance of the foregoing bonds is for a proper and legal public purpose and is fully authorized by law and each of the foregoing bonds to be executed as aforesaid and the proceedings incident thereto are hereby validated and confirmed."
We have carefully studied the opinion and judgment of the Circuit Court validating the proposed bonds and find that controlling law and authority support the same. We agree that the Circuit Court decision should be approved without modification.
Specifically, we do not find that Dade County by the Cooperation Agreement with the Authority (originally executed on July 21, 1972 and amended on April 13, 1973) has pledged its ad valorem taxing power to aid any private corporation or person in violation of Sections 10 and 12 of Article VII of the State Constitution. No ad valorem tax funds of the County on hand or to be raised by the County are pledged by the Cooperation Agreement for the payment of any of the bonds to be issued by the Authority. Thus it is correct to say particularly that no ad valorem tax revenue of the County is covenanted or pledged to pay any part of Interama's $12,000,000 Initial Development Revenue Bonds, Series 1972.
*203 After careful study we conclude, as did the Circuit Judge, that Sections 8, 9, 10, 11 and 12 of Article VII of the State Constitution do not preclude Dade County under the authority of its home rule amendment and charter and applicable state statutes from aiding Interama and receiving in return certain land and recreational facilities in the manner provided in the Cooperation Agreement, no pledge of its ad valorem taxing power or the general credit of the county being made therein.
As was pointed out in Nohrr v. Brevard County Educational Facilities Authority (Fla. 1971), 247 So.2d 304, text 308, 309, the 1968 revision of the State Constitution did not enlarge the limitations of the 1885 State Constitution with reference to the lending or pledging of the taxing power or credit of a public body to aid a private corporation or person. To the contrary, such limitations were relaxed for airports, port facilities, and industrial or manufacturing plants. Save for the four excepted types of projects, we held in Nohrr each proposed public revenue bond project would "have to run the gauntlet of prior case decisions [which arose under the 1885 Constitution] to test whether the lending or use of public credit for any of them was contemplated."
In this context it is made quite clear from the principles enunciated in the earlier cases of Town of Medley v. State (Fla. 1964), 162 So.2d 257, and State v. Board of Public Instruction, Okaloosa County (Fla. 1968), 214 So.2d 723, that Dade County's proposed aid to Interama as provided in the Cooperation Agreement does not violate any provision of Article VII of the State Constitution.
In Medley it was pointed out by citation of a long list of cases that "only bonds or certificates of indebtedness which directly obligate the ad valorem taxing power are encompassed by Section 6, Article IX, Fla. Const." To hold otherwise according to the Court,
"would mean that any pledging of non-ad valorem revenues previously used for general operating expenses of a municipality would require approval by vote of the freeholders and such was never the purpose of the cited constitutional provision."
Similarly, in State v. Board of Public Instruction, Okaloosa County, supra, this Court held:
"... it has long been held that no election of the freeholders is necessary if the certificates of indebtedness or revenue certificates are payable from excise taxes or sources other than ad valorem taxes."
The case of Betz v. Jacksonville Transportation Authority (Fla. 1973), 277 So.2d 769, involved legal principles of similar import to those in the instant case, except that in Betz "other revenues" of the City of Jacksonville were precluded from being used to aid the Jacksonville Transportation Authority on a deferred basis because F.S. Section 349.04(3), F.S.A., provided
"nor shall any of the authority's obligations be deemed to be obligations of the state or any political subdivision or agency thereof, nor shall the state or any political subdivision or agency thereof, except the authority, be liable for the payment of the principal of or interest on such obligations."
In the instant case there is ample statutory authority for Dade County to aid Interama on a deferred basis with certain "other county funds" as provided in the Cooperation Agreement, excepting, however, ad valorem tax revenues the use of which is precluded by the Constitution in the absence of an approving referendum.
Section 11(c), Article VII, State Constitution, expressly authorizes Interama, a state agency, to issue revenue bonds without a vote of the electors to finance the cost of its project, the same to be payable from sources other than state tax revenues or rents or fees paid from state tax revenues. This provision does not preclude the County's aid to Interama under the Cooperation Agreement.
*204 We have carefully considered the other objections raised by the State in its appeal of the decision below and have found them to be without merit. Based upon the following authorities we have determined that the lower court's decision is correct and hereby affirm. Compare State v. Inter-American Center Authority (Fla. 1962), 143 So.2d 1; State v. Board of Public Instruction, Okaloosa County, supra; State v. Tampa Sports Authority, 188 So.2d 795 (Fla. 1966); Town of Medley v. State, supra; State v. Florida State Turnpike Authority, 80 So.2d 337 (Fla. 1955); State v. Gordon, 138 Fla. 312, 189 So. 437 (1939); State v. Division of Bond Finance of Department of General Services (Fla. 1971), 246 So.2d 102; Platts v. Division of Bond Finance, Fla., 275 So.2d 231, opinion filed March 7, 1973, and State of Florida v. Division of Bond Finance, Fla., 278 So.2d 614, opinion filed May 30, 1973.
Affirmed.
ROBERTS, Acting C.J., and ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.