QUESTIONS: 1. May moneys from the county's general fund be used to help operate a fire tax district established by the Board of County Commissioners of Pasco County to provide fire protection in the unincorporated area of Pasco County? 2. May the fire tax district borrow money from Pasco County to finance acquisition of capital assets if the money cannot be repaid in the same fiscal year?
SUMMARY: Although primarily a factual determination, it is doubtful that, within the purview of Art. VIII, s. 1(h), State Const., the operation of a fire tax district established by the Pasco County Commission in that county's unincorporated area will be of such substantial benefit to the municipalities situate within Pasco County as to permit the use of moneys in the county's general fund to help finance such operation. In addition, such financing would not appear to be within the authority of s.125.01(1)(q), F.S. The fire tax district may not obligate its ad valorem taxing power for longer than twelve months to finance the acquisition of capital assets without the approval of the district's electorate under the provisions of Article VII, s. 12, State Const. AS TO QUESTION 1: It is fundamental that in order for a county to levy an ad valorem tax upon all real property situate within the county, the purpose for which the levy is exacted must be a "county purpose." Article VII, s. 9(a), State Const.; 39 Fla. Jur. Taxation s. 91 (1960); AGO 073- 327. In the instant situation, the state legislature has authorized the governing body of a county to provide fire protection, s. 125.01(1)(d), F.S.; and, more specifically, the state legislature has designated the providing of fire protection to the unincorporated areas of Pasco County a "governmental function of the Board of County Commissioners of Pasco County, Florida." Chapter 67-1891, Laws of Florida. See Escambia County v. Board of Pilot Com'rs, 42 So. 697, (Fla. 1907), and State ex rel. Board of Public Instruction v. Lee,1 So.2d 166 (Fla. 1941), in which it was recognized that the legislative designation of a county purpose by the state legislature will be enforced by the courts, unless it clearly appears that it is not a county purpose within the meaning of Art. IX, s. 5, State Const. 1885 (now Art. VII, s. 9, supra). See also City of West Palm Beach v. Williams, 291 So.2d 572 (Fla. 1974). However, Art. VIII, s. 1(h), State Const., adopted as part of the 1968 constitution revision, provides that Property situate within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas. This provision has been judicially interpreted as prohibiting the county taxation of property situate within municipalities unless the benefits accruing to the municipal areas from the service funded by such taxation are found to be "real and substantial and not merely illusory, ephemeral and inconsequential." City of St. Petersburg v. Briley, Wild Assoc., Inc. 239 So.2d 817, 823 (Fla. 1970), in which it was stated that the situation in Pinellas County was such that the City of St. Petersburg would benefit substantially from a proposed county sewage treatment facility, which, although not to be used directly by the city, would help prevent pollution and disease spillover into the city. See also Burke v. Charlotte County, 286 So.2d 199 (Fla. 1973). Thus, in order to comply with the foregoing constitutional provision, county funds obtained in part by taxing property situate within the municipalities in Pasco County — which would include moneys within the county's general fund, s. 129.02, F.S. — could not be used to operate a fire tax district which did not provide fire protection substantially benefiting such municipalities. In this regard, it is important to note that the Florida Supreme Court in City of St. Petersburg v. Briley, Wild Assoc., Inc., supra, at p. 824, in dictum, stated that We can conceive of services sought to be rendered by a county within a particular unincorporated area which would have no consequential benefits to the municipalities of the county such as, for instance . . . the establishment of fire fighting facilities. . . . Thus, although the resolution of this constitutional question is substantially a factual determination which can be made only after a consideration of the geographical and developmental characteristics of Pasco County and other special circumstances which may be relevant, suffice it to say that I cannot unequivocally conclude that the use of moneys in that county's general fund (raised in part by taxation of property within municipalities) for the purpose here contemplated would substantially benefit any or all of the incorporated municipalities located within Pasco County. In addition, the fire tax district in question was apparently created by county ordinance pursuant to s. 125.01(1)(q), F.S., which provides in pertinent part that the legislative and governing body of a county shall have the power to Establish . . . special purpose districts for any part or all of the unincorporated area of the county, within which may be provided fire protection . . . from funds derived from service charges, special assessments, or taxes within such district only. (Emphasis supplied.) Thus, pursuant to this legislative authorization, the use of moneys in the county's general fund (derived in part from a county tax on property situate within municipalities) could not be used to operate a fire tax district created within the unincorporated area of Pasco County. Finally, the Pasco County ordinance which creates the fire tax district in question, Ord. No. 73-19, adopted June 26, 1973, provides that The board of county commissioners as the board of directors of the Greater Dade City Fire Taxing District is hereby authorized and empowered to make an annual appropriation of monies for the operation of said tax district and for the payment of compensation for fire protection within said district and to levy a tax up to four (4) mills upon each dollar of valuation of taxable property in said district for such purposes for the year 1973, and a tax of up to one mill upon each dollar of calculation each year thereafter. (Emphasis supplied.) Thus, it appears that, in creating the fire tax district, the county commissioners themselves contemplated that the district would be operated with funds derived solely from an ad valorem tax assessed on taxable property within the district, and that other county funds, including those budgeted as part of the county's general fund, were not to be used in the operation of the district. AS TO QUESTION 2: Article VII, s. 12, State Const., provides in pertinent part that Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only: (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors . . . . It has been held that any device whereby the exercise of the ad valorem taxing power is obligated is within the purview of this constitutional provision. See State v. Halifax Hospital District, 159 So.2d 231
(Fla. 1963), and authorities cited therein construing Art. IX, s. 6, State Const. 1885, precursor of the above-quoted provision. See also State v. Inter-American Center Authority, 281 So.2d 201 (Fla. 1973), in which cases construing the 1885 constitutional provision were held, in effect, to be applicable when determining the new constitutional requirements. Thus, in the instant situation, the fire tax district could not, through the use of any device, obligate the ad valorem taxing power for longer than twelve months to finance a capital project, such as the purchase of firefighting equipment, without the approval of the district's electorate.