QUESTION: Does the Department of Citrus of the State of Florida have the authority to enter into the agreement discussed in the following statement of facts?
SUMMARY: Section 601.158, F.S., authorizes the Florida Citrus Commission as head of the Department of Citrus to enter into agreements and contracts with any person, firm, institution, corporation, or business unit, as well as any state or federal agency, which the commission deems wise, necessary, and expedient in carrying out the objectives of the research and development programs therein prescribed; and such may include a contract whereby the commission lends money from the funds generated from the excise tax imposed under s. 601.158(1) for developmental or research programs of the department to be repaid over a 5-year period for the purpose of assisting in the development and testing of a prototype of a pickup machine or harvesting device for use by the Florida citrus industry. STATEMENT OF FACTS: Your question centers around an agreement entered into by the State of Florida Department of Citrus and Citrus Systems, Inc., on the 2nd of June, 1975, whereby the Department of Citrus has agreed to lend to Citrus Systems, Inc., the sum of $45,000 to be evidenced by a promissory note made by Citrus Systems, Inc., payable to the Department of Citrus within 5 years, bearing no interest for the first 3 years from the date thereof and bearing interest from a 3year anniversary date at a variable rate of 1 percent per annum less than the prime rate as recognized by the national financial industry on the anniversary date each year, with annual adjustments in said interest rate. An examination of the agreement reveals that the first party (Citrus Systems, Inc.), a Florida corporation, has been engaged in substantial research and development of a self-propelled pickup machine. The agreement reflects that the second party (Department of Citrus) is desirous of assisting the first party financially and otherwise in the development and testing of a prototype of the aforementioned self-propelled pickup machine for use by the Florida citrus industry. The agreement further reflects that the first party agrees to give to the second party a security interest in the aforementioned self-propelled pickup machine or any prototypes thereof existing on the date of the contract and any other prototypes of the machine on which the moneys loaned by the second party are used. This question is answered in the affirmative. Initially it should be noted that Ch. 601, F.S., is an extremely broad and far-reaching statute. In this respect see Mayo v. Eckerson Fruit Canners, 188 So. 781, and State Department of Citrus v. Griffin, 239 So.2d 577. The breadth of authority covered by Ch. 601 can be readily seen by examining the contents of the statute. Numerous excise taxes are authorized thereunder. The purposes of the chapter are set forth in s. 601.02 and include the legislative admonition that the chapter is passed in the exercise of the police power to protect health and welfare and to stabilize and protect the citrus industry of the state [s. 601.02(1)]. Section 601.04, F.S., establishes the Florida Citrus Commission and describes the composition thereof. Section 601.05, F.S., declares that the Department of Citrus ". . . shall be a body corporate, and shall have power to contract and be contracted with, and shall have and possess all the powers of a body corporate for all purposes necessary for fully carrying out the provisions and requirements of this chapter. . . ." Section601.10, F.S., describes certain powers of the Department of Citrus pointing out that the department's powers are not confined to those specifically mentioned in s. 601.10. Cf. State of Florida Department of Citrus v. O. D. Huff, Jr., 290 So.2d 130 (1 D.C.A. Fla., 1974), cert. denied, 295 So.2d 632 (Fla. 1974). Section 601.158, F.S., is pertinent to your inquiry. Section 601.158(1) levies and imposes an additional excise tax of $.01 per box upon each standard pack box of citrus fruit taxed under s. 601.15, F.S., and grown in this state that is sold or delivered into the primary channel of trade. Section 601.158(3) provides: All excise taxes levied by this section and collected by the Department of Citrus shall be paid into the state treasury on or before the fifteenth day of each month and said moneys shall be deposited into the Florida citrus advertising trust fund. After deducting the service charge required by s. 601.15(7)(a), said moneys shall be set aside and accounted for therein as a special fund to be known as the citrus harvesting research and development fund. All moneys in the citrus harvesting research and development fund are hereby appropriated to the Department of Citrus to be expended in the conduct of a research and development program substantially to eliminate or reduce economic waste in the harvesting and handling of citrus fruit grown in Florida. (Emphasis supplied.) As can be noted, the excise taxes levied thereunder are to be collected by the Department of Citrus and paid into the State Treasury on or before the 15th day of each month. Said moneys are to be deposited into the Florida Citrus Advertising Trust Fund. After deducting the service charge under s. 601.15(7)(a), F.S., the moneys collected are to be set aside and accounted for therein as a special fund to be known as the Citrus Harvesting Research and Development Fund. The final sentence of the section appropriates the moneys in the Citrus Harvesting Research and Development Fund to the Department of Citrus to be expended in the conduct of a research and development program substantially to eliminate or reduce economic waste in the harvesting and handling of citrus fruit grown in Florida. The subject matter of the contract under consideration is a pickup machine under development and testing for use by the citrus industry. Section 601.158(4), F.S., provides: In order to carry out the research and development contemplated by this section, the Department of Citrus is empowered to use the funds of the citrus harvesting research and development fund to provide suitable facilities and equipment for the purpose of conducting thorough and comprehensive study and research to determine the most efficient and economical means possible for the harvesting and handling of citrus fruits, including, but not limited to, the development of mechanical harvesting devices or other harvesting methods designed more efficiently to harvest citrus fruit and thereby increase the net returns to the Florida citrus grower for the crops produced upon his citrus groves. In providing facilities for the research and development program contemplated herein, the Department of Citrus is specifically authorized to enter into contracts or leases with citrus grove owners for the use of such citrus groves and citrus crops growing thereon. (Emphasis supplied.) As can be noted, this section specifically empowers the Department of Citrus to use the funds of the Citrus Harvest Research and Development Fund to provide suitable facilities and equipment for the purpose of conducting thereon a comprehensive study and research to determine the most efficient and economical means possible for the handling and harvesting of citrus fruits and ". . . the development of mechanical machine harvesting devices or other harvesting methods designed to efficiently harvest citrus fruit." The last sentence of the section authorizes the Department of Citrus specifically to enter into contracts or leases with citrus grove owners for the use of such citrus groves and citrus growing thereon. Section 601.158(6), F.S., provides in part: The commission, in carrying out the intent of this section, is authorized to enter into any mutually satisfactory contracts or agreements with any person, firm, institution, corporation, or business unit, as well as any state or federal agency, which the commission deems wise, necessary, and expedient in the carrying out of the objectives of the research and development program provided for herein. Any private person, group, association, or corporation who may avail itself of the funds, services, goods, or facilities of any developmental or research programs mentioned in this section shall not, by reason of such use and acceptance, be deemed to have impaired, in favor of the state, the Department of Citrus, or any other state agency, its right of patent. This shall include any patent presently held, or which could be applied for in the future, by such persons named herein. The Department of Citrus or any other state agency or branch of state government shall not become an owner of, or have any right, title, or interest in, any patent invention, concept, or idea relating to any harvesting device or machine for the purpose of harvesting, picking, or gathering of citrus fruit and related products of any private person, group, association, or corporation who may develop or has developed same, unless an agreement or contract specifically claiming any rights mentioned herein shall be in writing signed by the Department of Citrus and the party or parties affected. (Emphasis supplied.) As can be clearly noted, this section expressly contemplates agreements and contracts entered into between the Florida Citrus Commission, which is the head of the Department of Citrus (see ss. 20.29(1) and 601.103(13), F.S.), and any person, firm, institution, corporation, or business unit, as well as any state or federal agency, which the commission deems wise, necessary, and expedient in the carrying out of the objectives of the research and development program provided herein. Thus, at this juncture it is clear that the Legislature has reposed wide discretion in the commission insofar as the contracts are concerned which the commission enters into for the purposes covered in s. 601.158, F.S. That the Legislature has expressly contemplated that private persons, groups, associations, or corporations may make use of the funds of any developmental or research program mentioned in the section is clear from the specific language of the section itself. This is further recognized from the language of the section which deals with title to ". . . any patent invention, concept or idea relating to any harvesting device or machine for the purpose of harvesting, picking, or gathering of citrus fruit and related products." The language clearly states that all rights and titles to any such inventions shall remain the sole property of the person or entity who may develop or has developed such an invention unless there is a contract to the contrary in writing signed by the Department of Citrus and the party or parties affected. That the department may own, hold, and develop patents and copyrights, see s. 601.101, F.S. Accordingly, it is quite clear that the Legislature is contemplating that private persons or entities may avail themselves of the funds generated under any developmental or research program of the department provided for in s. 601.158, F.S., and that the commission is authorized to enter into contracts or agreements with any such person or entity which it deems wise, necessary, and expedient in the carrying out of the objectives of the research development programs provided for therein. That such a project may extend beyond the period during which the taxes are collected is expressly recognized in the latter part of s. 601.158(7), F.S., as follows: The research and development program utilizing the funds collected hereunder shall not be limited in time and may extend beyond the period during which taxes are collected and may continue until all funds are expended or until the commission determines that maximum utilization of the funds collected has been achieved for the purposes herein set forth. Upon such a determination by the commission that maximum utilization of funds has been achieved and that further research and development would not produce further benefits as contemplated hereunder, any funds remaining in the citrus harvesting research and development fund shall remain in the Florida Citrus Advertising Trust Fund and are, upon that event, appropriated to the Department of Citrus for the uses and purposes prescribed in s. 601.15. (Emphasis supplied.) These statutes mentioned herein are clothed with the presumption of constitutionality which may only be altered by a court of competent jurisdiction. The Legislature has determined that the use of the funds generated under s. 601.158, F.S., in the manner prescribed therein is for a valid public purpose. The specific language of the Legislature as stated earlier can be ruled invalid only by a court of competent jurisdiction. The test has been outlined in numerous cases, one of which is the Florida Supreme Court case of Betz v. The Jacksonville Transportation Authority, 277 So.2d 769, wherein the court stated: The management contract, though extending beyond one year, does not violate Section 10 of Article VII, or F.S. Section349.04(3), F.S.A., which proscribe the giving or lending credit to private firms or corporations. It furthers a public purpose primarily and only incidentally benefits a private corporation. See Nohrr v. Brevard County Educational Fac. Auth., Fla. 1971,247 So.2d 304; State v. Daytona Beach Racing and Rec. Fac. Dist., Fla. 1956, 89 So.2d 34; State v. Dade County, Fla., 142 So.2d 79, and State v. Jacksonville Port Authority, Fla., 204 So.2d 881. There is little question but that s. 601.158, F.S., was adopted creating the fund to be expended in developing the most efficient and economical means possible for the harvesting or the handling of citrus fruit. The Legislature has not limited the manner of accomplishing this end and has, to the contrary, reposed this responsibility in the Florida Citrus Commission as head of the Department of Citrus. A legislative decision regarding the public need and welfare of the state insofar as the citrus industry is concerned should not be disturbed unless it can be demonstrated that the conclusion is clearly unwarranted or is prohibited by some express constitutional limitation. See Florida Citrus Commission v. Golden Gift, Inc., 91 So.2d 657, 660 (Fla. 1956); State v. Ocean Highway Port Authority, 217 So.2d 103, which cited, among other cases, the cases of Daytona Beach Racing and Recreational Facilities District v. Paul, 179 So.2d 349 and State v. Daytona Beach Racing and Recreational Facilities District,89 So.2d 34. The latter case pointed out that since the Legislature had determined that public purpose would be served, the court should not find to the contrary unless it be found the Legislature was not just and reasonable or was arbitrary. Here, as in the Daytona Beach cases, the purposes of the chapter, found in s.601.02, F.S., mentioned previously, expressed the legislative determination of the significance of the citrus industry to the State of Florida. It states as one purpose that the chapter is passed . . . [b]ecause the planting, growing, cultivating, spraying, pruning, and fertilizing of citrus groves and the harvesting, hauling, processing, packing, canning, and concentrating of the citrus crop produced thereon is the major agricultural enterprise of Florida and, together with the sale and distribution of said crop, affects the health, morals, and general economy of a vast number of citizens of the state . . . and said business is therefore of vast public interest. Also see State of Florida Department of Citrus v. Huff, supra, at p. 132.